Shrader, Appellant, *v.* Equitable
Life Assurance Society of the
United States et al., Appellees.

(No. 83AP-768—Decided
August 23, 1983.)

*Messrs. Albers & Albers, Mr. James S.
Albers, Mr. Philip R. Bradley* and *Mr.
Steven A. Larson,* for appellant.

*Messrs. Vorys, Sater, Seymour &
Pease, Mr. John C. Elam* and *Mr. James
E. Phillips,* for appellees.

Whiteside, P.J. Plaintiff, John J.
Shrader, appeals from a citation by the
Franklin County Court of Common Pleas
in civil contempt ordering him incarcerated until he complies with a court order
to answer certain questions which plaintiff refused, and continues to refuse, to
answer upon the ground that the answers
might tend to incriminate him. The trial
court found that plaintiff had waived his
Fifth Amendment right against compulsory self-incrimination by "voluntarily" taking the witness stand and testifying as to certain matters, including "his
meeting with one Danny Kinser." Plaintiff contends, and defendant Wolford concedes, that the order is appealable pursuant to *In re Appeal of Smith* (1979), 60
Ohio St.2d 13 [14 O.O.3d 162]. Plaintiff
raises the following assignments of error:

"I. The trial court erred in finding
that John J. Shrader waived his constitutional privilege against self-incrimination
by testifying in the instant case.

"II. The trial court erred in finding
John J. Shrader in contempt of court for
failure to answer questions in the instant
case by exercising his privilege under the
Fifth Amendment of the United States

Constitution, by thereupon holding John J. Shrader in contempt and ordering him incarcerated in the Franklin County Jail."

Shrader commenced this action against the Equitable Life Assurance Society of the United States ("Equitable") for breach of contract for the failure of Equitable to pay him as primary beneficiary insurance proceeds from the death of his wife. Equitable deposited the insurance proceeds in the court and interpleaded the contingent beneficiary as a party who also claimed the insurance proceeds. An answer and counterclaim were filed by the contingent beneficiary asserting that Shrader, the primary beneficiary, was not eligible to obtain the insurance proceeds because he intentionally caused the death of the deceased. Shrader answered, denying that assertion.

At trial, although only a partial record is before us, the only disputed issue appeared to be whether Shrader intentionally caused the death of his wife. Arguably, important potentially incriminating evidence against Shrader were marks on his hands similar to the marks found on the deceased's body.

Prior to trial, Shrader's deposition was taken, and he testified at length under oath about his contacts with a witness named Danny R. Kinser, whom Shrader said had told him that he had seen the marks on Shrader's hands before the murder. Shrader claimed that Kinser had approached him several months later and offered to testify to this matter. Shrader answered all questions about Kinser and his alleged contacts with him without involving the Fifth Amendment.

At trial, Wolford's attorneys called Shrader on cross-examination as a witness during their case in which the issue was whether Shrader intentionally caused the death of his wife. Once again, without claiming a right of self-incrimination, Shrader testified at length about his meeting with Kinser several months after the murder when Kinser was alleged to have told Shrader that he

had seen the marks on Shrader's hands before the murder took place. By permission of court, Shrader's attorneys produced Kinser as a witness out of order during Wolford's case, and Kinser testified as Shrader said he would. However, after Kinser was released as a witness, he informed appellees that his testimony was a lie and that he had been offered payment by Shrader to perjure himself. Kinser was recalled as a witness and he so testified.

At that point, Wolford's attorneys sought to recall Shrader to the stand on cross-examination to ask Shrader more questions about Shrader's contact with Kinser. For the first time, Shrader claimed self-incrimination privileges under the Fifth and Fourteenth Amendments to the United States Constitution. He refused to answer questions of whether he had solicited or procured Kinser to commit perjury, whether he had promised or offered to give Kinser money to testify, whether he had knowingly made a false statement under oath in the courtroom, and whether he believed that the story that Kinser told when he was called as Shrader's witness could have affected the course or outcome of the proceeding. Finally, Wolford's counsel asked if Shrader intended to refuse to answer any other questions relative to Kinser's testimony on the same grounds and Shrader's counsel stated that Shrader would refuse to answer on the same grounds on advice of counsel.

At the outset, it is axiomatic that the right against self-incrimination does not include a right to commit perjury.

The mere bringing of a civil action or taking the stand does not constitute a waiver of the right against self-incrimination with respect to all matters that may be pertinent to that action. See Annotation (1960), 72 A.L.R. 2d 830. On the other hand, a party to a civil proceeding has no right to continue to assert his claim or defense against an adverse party and at the same time refuse to give

pertinent testimony, not otherwise obtainable, material to the claim or defense of such adverse party. See Annotation (1965), 4 A.L.R. 3d 545; *Meyer* v. *Second Judicial Dist. Court* (1979), 95 Nev. 176, 591 P.2d 259; *Minor* v. *Minor* (Fla. App. 1970), 232 So. 2d 746; *Steinbrecher* v. *Wapnick* (1969), 24 N.Y. 2d 354, 248 N.E. 2d 419; *Annest* v. *Annest* (1956), 49 Wash. 2d 62, 298 P.2d 483.

However, it is well-established that a party who voluntarily becomes a witness in a civil action and testifies on direct examination in his case as to the details of a transaction waives his right against self-incrimination with respect to those details testified to on direct examination and has no right to invoke the Fifth Amendment during cross-examination and refuse to answer further questions concerning those details voluntarily testified to on direct. *Rogers* v. *United States* (1951), 340 U.S. 367; *In re Master Key Litigation* (C.A. 9, 1974), 507 F.2d 292. As stated by the Supreme Court in *Brown* v. *United States* (1958), 356 U.S. 148, at pages 155-156:

"* * * when a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. * * * Petitioner, as a party to the suit, was a voluntary witness. She could not take the stand to testify in her own behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination."

The waiver, however, is not complete and some courts have held it does not apply to inquiry concerning possible criminal activity of the party-witness as to a matter which was not testified to on direct. See Annotation, 72 A.L.R. 2d 830; *Rogers* v. *United States, supra; McCarthy* v. *Arndstein* (1923), 262 U.S. 355; *Steinbrecher* v. *Wapnick, supra.*

A more vexing question is present where the party-witness is called as a witness on cross-examination during the adverse party's case without objection. Generally, this is not considered the type of voluntary testimony that will constitute a waiver of the right against self-incrimination except as to answers given without invoking the privilege since the testimony is not sufficiently voluntary to constitute a waiver as the party-witness is required to testify. *Arndstein* v. *McCarthy* (1920), 254 U.S. 71; *McCarthy* v. *Arndstein, supra.*

Generally, where the testimony is not "voluntary," the witness may answer some questions on a subject and then invoke the right against self-incrimination with respect to further questions when it becomes incriminating. As stated by the Supreme Court in *Brown* v. *United States, supra,* at page 155:

"A witness who is compelled to testify, as in the *Arndstein* type of case, has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate. It would indeed be irrelevant for him to do so. If he is to have the benefit of the privilege at all, and not be confronted with the argument that he has waived a right even before he could have invoked it, he must be able to raise a bar at the point in his testimony when his immunity becomes operative."

Defendant Wolford contends that the Ohio rule is different, relying upon *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201 [15 O.O.3d 221]. That case was a criminal, not a civil, case and involved a witness, not a party, who refused to testify, but not in reliance upon the right against self-incrimination. It is not pertinent to the issues here since they were neither raised

nor determined in *Kilbane.* Furthermore, *Kilbane* involved punitive, not coercive, incarceration.

Plaintiff Shrader, upon being called by defendant Wolford as a witness, testified on cross-examination, *inter alia,* to a "meeting" with one Kinser the day before his (Shrader's) wife was violently killed. First, Kinser verified this "meeting" but later recanted and stated the "meeting" was months later and that Shrader promised to pay him (Kinser) a substantial sum for the perjured testimony.

Where a party-witness in a civil case refuses to answer properly propounded questions after having waived his right against self-incrimination but continues to assert it as a basis for refusal to answer questions, the trial court may properly find the defendant in contempt of court. The orderly administration of justice requires that a court have the power to punish those who contumaciously refuse to obey a valid order of the court to answer questions. An appropriate method of vindicating the judicial process when confronted with such a refusal is to find the party-witness guilty of criminal contempt and impose an appropriate sentence. *Brown* v. *United States, supra.*

In the instant case, however, the trial court has not taken such action but, instead, has found plaintiff Shrader guilty only of civil contempt and has ordered incarceration as a means to attempt to coerce Shrader to comply with the court order, rather than as punishment for refusal to comply with such order. Use of civil contempt in this manner is primarily for the benefit of the adverse party to attempt to afford him the answer to the questions propounded in furtherance of such adverse party's claim or defense, rather than as punishment imposed for vindication of the judicial process.

Incarceration of a party to compel a party to respond to a question to which he claims a right against self-incrimination (rather than punishment for refusal) should be taken in a civil case only where no more appropriate means are available to enable the adverse party to pursue his claim or defense. Continued incarceration of Shrader will not afford defendant Wolford the benefit of the testimony he seeks.

We are confronted with competing constitutional and procedural rights: plaintiff Shrader's right, if not waived, to assert the privilege against self-incrimination while pursuing or defending a civil action, balanced against defendant Wolford's right to testimony needed to present his claim and defense. Shrader is not entitled to have only his version of the truth (his association with Kinser) presented and then to invoke the right against self-incrimination to prevent further inquiry to test that version of the truth, especially where the witness verifying Shrader's testimony has now recanted. The remedy chosen by the trial court which indefinitely deprives Shrader of his liberty without any corresponding benefit to the adverse party, Wolford, is inappropriate. Shrader's refusal to answer further questions concerning his alleged first contact with Kinser (which Kinser now states never took place) goes to the very heart of the crucial issues before the trial court.

In light of the recanting witness, defendant Wolford is entitled to renew the questions previously asked of plaintiff Shrader concerning his alleged first contact with Kinser, although not using the same phraseology. As to testimony given by Shrader on cross-examination relative to his meetings with Kinser, he has clearly waived his right against self-incrimination. Having once answered the questions in a manner favorable to himself, he cannot now claim the privilege against self-incrimination when confronted with intervening testimony by Kinser that the first meeting (prior to Jean Shrader's death) never occurred. The questions concerning possible subornation of perjury and bribery present a different issue since

the limited record does not clearly reveal that there was prior inquiry about these matters. The waiver of a party called upon cross-examination by responding to questions is more narrow than that with regard to testimony on direct and is generally limited to that which is explicitly and implicitly included in the specific questions propounded on cross-examination.

Here, more appropriate means are available to satisfy the competing constitutional and procedural rights than that chosen by the trial court. Under the circumstances, the trial court had at least two other alternatives: (1) to strike all testimony pertinent to the matter to which Shrader refuses to testify, or (2) to render judgment for failure to comply with the court's order upon his claim or in the nature of default for failing to defend upon the adverse party's claim. See Civ. R. 41(B)(1) and 55(A).

Since more appropriate measures are available which would serve fully to protect the adverse party's interests, the trial court erred in imposing the sanction of coercive incarceration.

Our finding herein that coercive incarceration is inappropriate does not, however, preclude the trial court from imposing incarceration as punishment for plaintiff's refusal to obey the court's order if found to be appropriate in a criminal contempt proceeding. Cf. Civ. R. 37(B)(2)(d).

Turning to specific consideration of the assignments of error, the first is not well-taken since the trial court did not err in finding that plaintiff Shrader waived his right against self-incrimination to the extent that he testified upon cross-examination. While the form of the questions posed by defendant Wolford may have been improper, the objection was not predicated upon form, and Shrader's counsel indicated that Shrader would refuse to answer any question concerning Kinser. However, the scope of the waiver apparently found by the trial court was overly broad.

As to the second assignment of error, it is well-taken to the extent that the trial court ordered plaintiff Shrader incarcerated until he answered questions and with respect to the overbroad scope of the order that he answer questions.

Upon remand, the trial court should reevaluate the contempt finding and determine the appropriate sanction, if any, to impose, although if Shrader persists in his refusal to answer questions which the trial court properly orders him to answer, the appropriate sanction, as we have indicated, is forfeiture of the right to continue to pursue or defend the claims.

Accordingly, for the foregoing reasons, the first assignment of error is overruled, and the second assignment of error is sustained in part; and the order in contempt appealed from is reversed, and this cause is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

REILLY and MCCORMAC, JJ., concur.