This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Donald Georgeoff, has appealed from his conviction in the Medina County Court of Common Pleas for complicity to commit theft. We affirm.
On April 6, 2000, the Media County Grand Jury indicted Defendant for complicity to commit theft, in violation of R.C. 2923.03(A)(2) and R.C.2913.02. Defendant moved to dismiss the charge based on the statute of limitations. The trial court did not rule on the motion. The State moved to consolidate the cases of Defendant and his two co-defendants. The trial court denied the motion. Following a seven day bench trial, the court convicted Defendant and sentenced him to a four year prison term. Defendant timely appealed raising four assignments of error, which we have rearranged for ease of review.
 ASSIGNMENT OF ERROR I The trial court erred in considering testimony about events that occurred before the enactment of R.C. 2923.03
in 1986.
In his first assignment of error, Defendant argues that the trial court erroneously considered testimony regarding activities that occurred prior to the 1986 inception of R.C. 2923.03, under which he was convicted. We disagree.
A trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party. Williams v. Oeder
(1995), 103 Ohio App.3d 333, 341. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
R.C. 2923.03, which addresses the offense of complicity, became effective on January 1, 1974. As originally enacted, R.C. 2923.03(D) provided that a defendant could not be convicted on the uncorroborated testimony of an accomplice. The legislature amended R.C. 2923.03(D) effective September 17, 1986. As amended, R.C. 2923.03(D) no longer requires corroboration of an accomplice's testimony. Rather, R.C.2923.03(D) requires the trial court to deliver a cautionary instruction to the jury with regard to the accomplice's testimony. The amendment is prospective and may not be applied to a defendant who was charged with committing an offense prior to that date. State v. Mullins (1986),34 Ohio App.3d 192, 199.
In the instant case, Defendant's argument rests upon the claim that the complicity statute did not exist prior to 1986 and that the application of the statute is prospective from that date. However, the statute became effective in 1974 and only the application of the amended section (D) is prospective. See Mullins, 34 Ohio App.3d at 199. Therefore, the testimony regarding the items and events in question were relevant to whether Defendant was guilty of complicity to commit theft. Furthermore, the 1986 amendment to the statute addressed whether a defendant could be convicted of complicity solely on the testimony of an accomplice. Such change in the statute is irrelevant to the consideration of the question before us. Consequently, the trial court did not abuse its discretion in considering testimony with regard to the activities that occurred within the family prior to 1986. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR III The trial court erred in admitting prior testamony [sic.] of [Defendant] in violation of his Fifth Amendment right[.]
Defendant maintains in his third assignment of error that the trial court violated his Fifth Amendment right against self-incrimination when it admitted a transcript of Defendant's testimony given during a prior probate hearing. Defendant's argument is not well taken.
As previously stated, a trial court's decision regarding the admission and exclusion of evidence will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party. Williams,103 Ohio App.3d at 341.
The Fifth Amendment protects a person against incrimination through compelled testimony or other compelled acts having some testimonial character. It is well-recognized that this constitutional protection applies both to the accused in criminal proceedings and to witnesses in criminal and civil proceedings. Lefkowitz v. Turley (1973), 414 U.S. 70,77, 38 L.Ed.2d 274, 281. In the context of criminal proceedings, the Fifth Amendment privilege secures to the accused the right not to testify. Minnesota v. Murphy (1984), 465 U.S. 420, 426, 79 L.Ed.2d 409,418. However, prior statements by a defendant are admissible in a criminal trial if they were voluntarily made and are relevant. State v.Niesz (Dec. 5, 1994), unreported, Stark App. No. CA-9231, 1994 Ohio App. LEXIS 5897, at *9, citing Evid.R. 801(D)(2); Colorado v. Spring (1987),479 U.S. 564, 93 L.Ed.2d 954; Miranda v. Arizona (1966), 384 U.S. 463,16 L.Ed.2d 694.
In civil proceedings the amendment prohibits the state from compelling a witness to testify as to matters which may tend to incriminate such witness in subsequent proceedings. McCarthy v. Arndstein (1924),266 U.S. 34, 40, 69 L.Ed. 158, 161. Compulsion, in this sense, arises whenever some penalty, be it imprisonment or economic coercion, is imposed for failing to offer testimony. Turley, 414 U.S. at 77-78,38 L.Ed.2d at 281-282; Lefkowitz v. Cunningham (1977), 431 U.S. 801, 805,53 L.Ed.2d 1, 6-7. The privilege against self-incrimination can be asserted in a case whenever testimony might subject a person to criminal liability. Murphy, 465 U.S. at 426, 79 L.Ed.2d at 418.
This case presents us with a situation where Defendant, a party-witness, was called as a witness on cross-examination during the adverse party's case without objection. Generally, in this instance, this is not considered the type of voluntary testimony that will constitute a waiver of the right against self-incrimination except as to answers givenwithout invoking the privilege. (Emphasis added). Shrader v. EquitableLife Assur. Soc. (1983), 10 Ohio App.3d 277, 279, citing Arndstein v.McCarthy (1920), 254 U.S. 71.
The record demonstrates that Defendant voluntarily provided answers at the prior civil proceeding without asserting the privilege against self-incrimination. Furthermore, there is no evidence that Defendant was compelled to make any statements against his interest. Consequently, Defendant waived his Fifth Amendment constitutional right in the civil proceeding. Since there was no showing that the prior statements were involuntary or irrelevant, the State was permitted to introduce the prior testimony at the subsequent criminal trial. Therefore, the trial court did not abuse its discretion in admitting Defendant's prior testimony from the civil action. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV [Defendant's] conviction is against the sufficiency of the evidence, the manifest weight of the evidence, and beyond the six-year period prescribed by R.C. 2901.13[.]
In his final assignment of error, Defendant presents the following two arguments: (1) his conviction for complicity to commit theft was insufficient as a matter of law and against the manifest weight of the evidence, and (2) the grand jury indicted Defendant beyond the six year statute of limitations. This court disagrees with both contentions.
 A. Sufficiency and Manifest Weight
The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. Id.;State v. Feliciano (1996), 115 Ohio App.3d 646, 652.
While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion.State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This action is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted). Statev. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
The trial court convicted Defendant of complicity to commit theft. The complicity statute, R.C. 2923.03 provides, in relevant part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense[.]
The theft statute, R.C. 2913.02 states:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
Specifically, Defendant claims that there was no evidence that he committed theft, pursuant to R.C. 2913.02, to support his conviction.
The record indicates that Defendant and his wife and co-defendant, Angela Georgeoff ("Angela"), moved in with Defendant's elderly mother, Marie Georgeoff ("Marie"), in 1985. Defendant acquired a power of attorney over Marie on January 1, 1988. The power of attorney did not state that Defendant, the attorney-in-fact, had the authority to give gifts on behalf of Marie. Additionally, no gift tax returns were ever filed for any of the property. In 1993, Defendant, Angela, Marie, and Defendant's daughter and co-defendant, Diane Broderick ("Diane"), moved into a newly constructed home on Beach Road in Medina. Marie died in 1994 and Defendant was appointed as executor of Marie's estate on December 29, 1995. In 1996, Thomas Georgeoff ("Thomas"), Marie's grandson, filed a complaint alleging that Defendant had stolen assets from Marie and her estate. The jury found Defendant guilty of concealing various loans, cash, personal property, and checks.
Marie's three grandchildren, Cheryl Blaser, David Georgeoff ("David"), and Thomas, testified at the criminal trial regarding the personal property which Marie had owned. This personal property included, among other items, furniture, furs, and jewelry, which Defendant had failed to file with the probate court when he submitted Marie's will for probate. David and Thomas also testified that Marie kept a significant amount of cash in her safe deposit box and in her home, which she stored in hat boxes and her desk. Defendant and his co-defendants testified at the prior concealment of assets proceeding that they cleaned out Marie's house and packed her personal property. The trial court admitted the prior testimony in this criminal proceeding. Furthermore, the evidence indicated that Defendant accessed the safe deposit box while Marie was living and closed the box after her death. Defendant did not include the value of any of the alleged cash in Marie's estate when he filed the will with the probate court.
David and Thomas testified that in 1982 Defendant lost a total of $150,000 in loans, borrowed from Marie. Specifically, they stated that Defendant called Marie on Christmas Day in 1982 and told her that he was not going to join the rest of the family for the holiday because he was very upset about losing the money. According to Thomas's testimony, Marie stated at the time that she had loaned Defendant a total of $150,000, which he had lost in investments. Defendant did not include this loan amount as an asset in Marie's estate.
David and Thomas also testified with regard to a Pontiac Phoenix, which Marie had purchased. David recalled that Defendant took the car from Marie's home for his personal use. Thomas stated that during the holidays of 1979 Defendant told them that he was "going to have to pay [Marie] back for that car." Further, they testified the Defendant eventually sold the car. The proceeds were not included in Marie's estate and there was no evidence presented to indicate that Defendant paid Marie for the car.
Erica Eversman, the attorney that represented Marie's grandchildren in the probate proceedings, testified regarding the discovery and evidence presented at the prior civil trial on the charge of concealment of assets. This evidence was also admitted in the instant criminal proceeding. She stated that Defendant utilized his power of attorney over Marie's checking account to write numerous checks over a period of four to five years. Eversman stated that according to the ledger that Diane created for the prior civil trial, approximately $7,000, out of a total spent of $94,573, was used for Marie's benefit. The remaining amount of approximately $87,000 was paid to Diane, Defendant, Angela, a category entitled "unknown," and Black River Petroleum ("Black River"), a company that appears to have been owned and controlled by Defendant and his co-defendants. For example, Defendant used funds from Marie's checking account to pay an attorney's bill in the amount of $2,500. Eversman indicated that the bill was for Defendant's legal representation for a purpose unrelated to Marie.
With regard to Black River, Eversman explained that the ledger indicated that checks totaling $39,400 went from Marie's account to Black River. Eversman went on to describe a document obtained from an accountant who prepared the tax returns for Black River. The document reflected that Marie loaned Black River an amount of $31,300. This was further evidenced by copies of checks written to Black River which totaled the loan amount. The evidence and Eversman's testimony indicated that Black River carried the Beach Road home as an asset on its financial statement. Eversman explained that Diane personally assumed the loan obligation of $31,300 to Marie, in return for the Beach Road house. The house was subsequently removed from Black River's financial statement.
Also, Eversman explained that the checking account ledger reflected that Defendant had exercised his power of attorney to write two of the checks from Marie's account totaling $24,208. Defendant used the funds to satisfy an open-ended mortgage which secured a loan from Marie to Diane for no consideration. In sum, Defendant used Marie's funds to pay a debt that Diane owed to Marie, thereby depriving Marie of the $24,208 obligation.
Eversman testified regarding the transactions surrounding property located in Akron, known as the Anaconda property. Originally, Defendant and Angela owned the property in question. Subsequently, they sold the property to John McNaughton and Angela retained a mortgage. In 1981, Angela transferred her interest in the mortgage to Marie. Eversman stated that Defendant collected the rent from the property, even though Marie held the mortgage interest. The evidence indicated that Marie received no income from the property. In approximately 1993, the county foreclosed on the property for delinquent taxes, at which time the records indicated that Marie was the first lien holder on the property. Sweetwater Productions, Inc. ("Sweetwater"), a company run by Defendant, submitted a bid of $70,000 at the Sheriff's sale and purchased the Anaconda property. However, the only amount paid by Sweetwater was the back taxes and fees totaling approximately $24,000. Sweetwater never paid Marie for her interest as first lien holder. Moreover, Eversman's testimony indicated that Sweetwater's attorney prepared an assignment of the note and mortgage, which assigned Marie's interest in the property back to Sweetwater without consideration.
Defendant did not present any witnesses; however, he points to his testimony from the prior civil proceeding to support his argument that he did not act without the consent of Marie when dealing with her property. Defendant contends that there is no evidence that shows that Defendant purposely or knowingly deprived Marie of her property. Specifically, during the civil trial, Defendant testified that every action he performed with regard to his power of attorney he did with Marie's consent. He testified that when Black River was experiencing financial difficulties, Marie told him to take whatever money he needed to bring the company back to solvency. Also, Defendant stated that Marie initiated the sale of her personal assets prior to her death.
Although some of the testimony before the trial court was in conflict, we decline to overturn the verdict because the trier of fact believed the prosecution's witnesses. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), Summit App. No. 19094, unreported, at 14. It is well settled that it is left to the trier of fact to resolve the weight and credibility of the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in convicting Defendant of complicity to commit theft. Therefore, we conclude that Defendant's conviction was not against the manifest weight of the evidence. Consequently, we find that Defendant's assertion that the State did not produce sufficient evidence to support a conviction is also without merit. This portion of Defendant's fourth assignment of error is overruled.
 B. Statute of Limitations
In the second part of his fourth assignment of error, Defendant merely states the proposition of law that R.C. 2901.13 requires the State to bring an indictment within six years. Defendant concludes this portion of his assignment of error by noting that he moved to dismiss the instant case on these grounds, but the trial court did not rule on the motion.
Although Defendant cites a proposition of law in this portion of his assignment of error, he fails to apply the law to the facts of this case. According to App.R. 12(A)(2):
 The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).
App.R. 16(A)(7) states that the appellant shall include in its brief:
 An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley (1988), 35 Ohio St.3d 157,159. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.State v. Watson (1998), 126 Ohio App.3d 316, 321.
Accordingly, we find that Defendant has failed to comply with App.R. 16(A) since he failed to present "reasons in support of the contentions" and for his "lack of briefing" on the second argument contained in this assignment of error. This portion of Defendant's fourth assignment of error is also overruled.
 ASSIGNMENT OF ERROR II The trial court erred in sentencing [Defendant] by basing the sentence on a dollar amount greater than that supported by the evidence[.]
Defendant avers in his second assignment of error that the trial court erred in sentencing him to a third degree felony, since the amount in controversy was less than $100,000. Specifically, Defendant contends that the trial court did not make an actual determination of the amount in controversy as required. Also, he argues that many of the items allegedly stolen predate the enactment of the complicity statute. Defendant's contentions are without merit.
R.C. 2913.02(B) outlines a hierarchy of theft offenses, where the degree of the offense is determined by the value of the property stolen. Significantly, the offense of theft is a felony of the third degree if the value of the stolen property is $100,000 or more. R.C. 2913.02(B). Moreover, the General Assembly has provided guidelines for the valuation of property for the purpose of theft offenses. R.C. 2913.61(A) provides as follows:
 In any case in which the jury or court determines that the value of the property or services at the time of the offense was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was * * * one hundred thousand dollars or more.
(Emphasis added).
The trial court found that the value of the stolen property met or exceeded $100,000 and sentenced Defendant accordingly. The testimony presented at trial, which we reviewed in Defendant's fourth assignment of error, established that the value of the items taken from Marie and her estate was greater than $100,000. Pursuant to R.C. 2913.61(A), the trial court was not required to return the exact value of the amount in controversy.
Furthermore, as discussed in Defendant's first assignment of error, the testimony regarding events and assets stolen prior to 1986 was relevant since the legislature enacted the complicity statute in 1974 and the subsequent 1986 amendment is not material to the instant case. Therefore, we find that the trial court did not err in sentencing Defendant for a felony of the third degree, pursuant to R.C 2913.02(B). Defendant's second assignment of error is overruled.
Defendant's four assignments of error are overruled. The conviction of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.