[Cite as *Nunez Vega v. Tivurcio*, 2014-Ohio-4588.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Raquel Nunez Vega, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-327 |
| v. | : | (C.P.C. No. 13CVC-02-1477) |
| Eddie Tivurcio, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on October 16, 2014

---

*Doucet & Associates Co., L.P.A., Troy J. Doucet,* and *Daniel A. Yarmesch,* for appellant.

*Law Office of Gary S. Shroyer,* and *Gary S. Shroyer; Hollern & Associates,* and *H. Tim Merkle,* for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Raquel Nunez Vega, appeals from the judgment of the Franklin County Court of Common Pleas granting the motion to compel filed by defendant-appellee, Eddie Tivurcio, d.b.a. El Chaparro Body Shop. For the reasons that follow, the judgment of the trial court is affirmed.

I. BACKGROUND

{¶ 2} On February 8, 2013, appellant filed a complaint against appellee alleging that she took her 2000 Ford Expedition ("Expedition") to appellee for repair of damages incurred in a June 2011 car accident. According to the complaint, for approximately $1,000, appellant acquired from a junkyard "nearly all of the parts necessary to repair" the Expedition and provided them to appellee. (Complaint, 1.) The complaint also alleges

that, in addition to providing appellee with the parts, appellant paid appellee $1,580 for the final repair.

{¶ 3} As alleged in the complaint, appellant paid appellee in full on August 16, 2011 and told appellee that, "due to personal issues," she would not be able to pick up the Expedition "for some time." (Complaint, 2.) From "August 16, 2011 to July 2012," appellant alleges she contacted appellee eight times and was told each time that the Expedition remained at the body shop and that she could leave it there "as long as necessary." (Complaint, 3.) According to the complaint, appellant told appellee in August 2012 that she would retrieve the Expedition immediately, but appellee then told her the Expedition was no longer there. Additionally, the complaint alleges that appellee refused to return the Expedition to appellant and refused to return any of the money appellant expended for its repair.

{¶ 4} Arising out of these facts, appellant's complaint asserts causes of action for conversion, trespass to chattels, and breach of bailment for which she seeks the market value of the Expedition as of August 2012, loss of use, and punitive damages. The complaint also alleges violations of the Ohio Consumer Sales Practices Act and seeks the cost of repairs, the cost of parts, the value of the Expedition, treble damages, attorney fees, and costs.

{¶ 5} Discovery proceeded and appellee took appellant's deposition on January 10, 2014. In response to a number of questions, appellant's counsel objected and instructed appellant not to answer based on an assertion of the Fifth Amendment. Though both counsel disagreed about the propriety of the objections, the deposition continued. Appellant's refusal to answer certain questions at her deposition prompted appellee to file a motion to compel pursuant to Civ.R. 37. In the motion to compel, appellee alleged that during the deposition, appellant's counsel made "about 100" objections and directed appellant not to answer 38 different times. (Motion to Compel, 4.) However, in the motion to compel, appellee specifically challenged only seven exchanges. Alleging that appellant was attempting to avoid discovery through the improper invocation of her Fifth Amendment privilege, appellee asked the court (1) to order appellant to answer completely and fully the questions asked to her in an oral deposition along with all other questions reasonably arising from her responses, and

(2) to order appellant and her attorneys to pay appellee the reasonable costs and expenses incurred in filing the motion to compel, including attorney fees.

{¶ 6} In her memorandum contra, appellant asserted (1) appellee failed to make reasonable efforts to resolve the discovery dispute prior to filing the motion to compel, (2) appellee failed to show that appellant is not entitled to assert a Fifth Amendment privilege in response to appellee's questions, and (3) appellee's questions were not relevant to these proceedings. Specifically, appellant stated appellee's motion to compel should be denied because it is "an offensive, racially-charged attempt to gain advantage" in the case by "prodding [appellant] about her immigration status," and it "seeks to pressure [appellant] into dropping her case or facing discovery sanctions" for refusing to answer "irrelevant questions about her national heritage" to which she has asserted her constitutional right not to answer. (Memorandum Contra, 1.) According to appellant's memorandum contra, the "vast majority of [appellee's] business comes from the Spanish-speaking community * * * a community that [appellee] knows is unlikely to seek a remedy against him in court." (Memorandum Contra, 2.) Citing to an article from the American Civil Liberties Union Foundation Women's Rights Project titled *No Free Pass to Harass: Protecting the Rights of Undocumented Immigrant Workers in Sexual Harassment Cases*, appellant's memorandum contra states, generally, that "[w]hile deportation proceedings are civil rather than criminal actions, a witness may assert the Fifth Amendment privilege for fears of prosecution regarding the use of false identification documents, failure to depart the U.S. within 90 days of an order of deportation, unlawful entry or attempted entry into the country, unlawful re-entry after being deported or denied admission, and false representation of self as a U.S. citizen." (Memorandum Contra, 4-5.) Appellant's memorandum contra, however, fails to indicate that appellant possessed any such fears.

{¶ 7} At the April 3, 2014 hearing on appellee's motion to compel, appellant argued none of the questions posed in the seven exchanges to which appellee referred to in the motion to compel sought evidence that was relevant to this litigation. Specifically, appellant's counsel stated "[t]hese questions are clearly meant to just intimidate and harass my client about her national heritage." (Apr. 3, 2014 Tr. 14-15.) Appellant's counsel did not challenge any specific question but, rather, challenged the seven

exchanges in a general manner, as he stated "an important issue here is does [appellant] have an absolute right to assert her Fifth Amendment privilege." (Apr. 3, 2014 Tr. 19.) At the conclusion of the hearing, the trial court found that the questions to which appellant objected were standard in "almost any deposition." (Apr. 3, 2014 Tr. 39.) Additionally, the trial court concluded that appellant's refusal to answer was based either on an "undefined Fifth Amendment privilege" or "relevance, which isn't the test in a discovery deposition at all." (Apr. 3, 2014 Tr. 39.) Thereafter, the trial court granted appellee's motion to compel and imposed sanctions in an amount to be determined at a later time. Accordingly, the trial court filed a judgment entry stating "the Court finds that the plaintiff and her counsel improperly invoked a 5th Amendment privilege and that they were not substantially justified in refusing to answer the questions." (Entry, 2.) Therefore, the court ordered that appellant sit for another discovery deposition and answer "all questions without improperly asserting a 5th Amendment privilege." (Entry, 2.) Further, the court ordered that appellant and her counsel pay appellee the expenses associated with obtaining the entry in an amount to be determined at a subsequent hearing.

## II. ASSIGNMENTS OF ERROR

{¶ 8} This appeal followed, and appellant brings the following assignments of error for our review:[1]

> 1. The Trial Court erred in granting Tivurcio's Motion to Compel where Ms. Nunez Vega was entitled to assert her Fifth Amendment privilege to Tivurcio's potentially incriminating questions.
>
> 2. The Trial Court erred in awarding sanctions against Ms. Nunez Vega and her counsel for the mere assertion of Ms. Nunez Vega's Fifth Amendment privilege.
>
> 3. The Trial Court's April 15th Judgment Entry is impermissibly vague.

---

[1] Appellee filed a motion to dismiss this appeal for lack of a final, appealable order. That motion was denied by this court via entry filed April 29, 2014.

4. The Trial Court erred in granting Tivurcio's Motion to Compel where Tivurcio failed to present any admissible evidence in support of his Motion to Compel.

5. The Trial Court erred in granting Tivurcio's Motion to Compel where Tivurcio failed to make a reasonable attempt to resolve the discovery dispute before filing his Motion to Compel.

## III. DISCUSSION

### A. Standard of Review

{¶ 9} A trial court "possesses broad discretion over the discovery process," and, therefore, appellate courts "generally review a trial court's decision regarding a discovery matter only for an abuse of discretion." *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 13. Nevertheless, an abuse of discretion standard "is inappropriate for reviewing a judgment based upon a question of law, including an erroneous interpretation of the law." *Id.* In general, the issue as to "whether information sought in discovery is confidential and privileged 'is a question of law that is reviewed de novo.' " *Id.*, quoting *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. This court has also recognized, however, "with respect to a privilege claim, the appropriate standard of review depends on whether the privilege claim presents a question of law or a question of fact." *Randall v. Cantwell Mach. Co.*, 10th Dist. No. 12AP-786, 2013-Ohio-2744, ¶ 9. Accordingly, "[w]hen it is necessary to interpret and apply statutory language to determine whether certain information is confidential and privileged, a de novo standard applies." *Id.* By contrast, "[w]hen a claim of privilege requires review of factual questions, such as whether an attorney-client relationship existed, an abuse-of-discretion standard applies." *Id.*

### B. First Assignment of Error

{¶ 10} In her first assignment of error, appellant contends the trial court erred in granting the motion to compel and in finding that she improperly asserted her Fifth Amendment rights during the deposition. Appellant does not direct us to any particular assertion but, rather, argues each instance of her Fifth Amendment assertion was proper.

{¶ 11} The Fifth Amendment to the U.S. Constitution provides that "no person shall be * * * compelled in any criminal case to be a witness against himself." The

privilege extends to answers which would in and of themselves support a criminal conviction as well as answers which would furnish a link in the chain of evidence needed to prosecute. *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *Maness v. Meyers*, 419 U.S. 449, 462 (1975). Moreover, it is well-settled that the constitutional protections afforded by the Fifth Amendment apply both to the accused in criminal proceedings and all witnesses in criminal and civil proceedings, including civil pre-trial discovery. *See, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *Guy v. Abdulla*, 58 F.R.D. 1 (N.D.Ohio 1973); *In re Turnmire*, 5th Dist. No. 2007-CA-00228, 2008-Ohio-1074; *Tedeschi v. Grover*, 39 Ohio App.3d 109 (10th Dist.1988). A party to a civil proceeding does not waive his privilege against self-incrimination merely by bringing an action to taking the stand to testify. *Shrader v. Equitable Life Assur. Soc.*, 10 Ohio App.3d 277 (10th Dist.1983), paragraph one of the syllabus, *rev'd on other grounds*, 20 Ohio St.3d 41 (1985).

{¶ 12} To be entitled to remain silent, there must be a valid assertion of the Fifth Amendment privilege. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983). Additionally, a blanket assertion of the Fifth Amendment privilege by a witness is not sufficient as the privilege must be asserted by a witness with respect to a particular question, and, in each instance, the court must determine the propriety of the refusal to testify. *Id.*, citing *Hoffman* at 486-88. It is for the court to decide whether a witness's silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. *Id.*, citing *Hoffman; see also In re Rebecca S.*, 6th Dist. No. L-96-377 (Oct. 31, 1997), citing *State v. Landrum*, 53 Ohio St.3d 107, 120 (1990); *McGorray v. Sutter*, 80 Ohio St. 400 (1909), paragraph two of the syllabus (the trial judge determines if a witness's testimony would be self-incriminating as the witness's claim alone is inadequate). "Indeed, the privilege may not be invoked merely by asserting that the information sought may, in a general sense, be incriminatory." *Rebecca S.*, citing *Cincinnati v. Bawtenheimer*, 63 Ohio St.3d 260, 266 (1992).

{¶ 13} Summarizing *Morganroth*, the court in *Rebecca S.* stated, "[*Morganroth*] concluded that it is not enough that the witness answer each question with a conclusory statement that the witness is asserting the Fifth Amendment privilege. The witness must supply 'such additional statements under oath and other evidence' in response to each

question so as to enable the court to identify the nature of the criminal charge for which the witness fears prosecution." *Rebecca S.*, quoting *Morganroth* at 167 (internal citations omitted). A valid assertion of the Fifth Amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. *Morganroth* at 167, citing *Hoffman*. "A witness must, however, show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." *Id.*, citing *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980). Additionally, "the Fifth Amendment protection against self-incrimination 'does not extend to consequences of a noncriminal nature.' " *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir.2007), quoting *Apfelbaum* at 125.

{¶ 14} The Supreme Court of Ohio addressed the question of whether certain information is so incriminating in nature as to invoke the privilege against self-incrimination in *Bawtenheimer.* In addressing said issue, the *Bawtenheimer* court relied on the following language from *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir.1990):

> In making this determination, a court asks essentially two things. The first is whether the information is incriminating in nature. This may appear in either of two ways. It may be evident on its face, in light of the question asked and the circumstances of its asking. * * * If it is so facially evident, that ends this inquiry. If it is not, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof.
>
> If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. As to this, the proper test simply assesses the objective reasonableness of the target's claimed apprehension of prosecution.

*Bawtenheimer* at 266-67. " 'When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege,' and can be done in camera." *Sharma v. New Opal Corp.*, S.D.N.Y. No. 03 Civ. 9427 (May 5, 2005), quoting *Estate of Fisher v. Commissioner*, 905 F.2d 645, 649-50 (2d Cir.1990). Further, " 'a party to a civil proceeding has no right to continue to assert his claim or defense

against an adverse party and at the same time refuse to give pertinent testimony, not otherwise obtainable, material to the claim or defense of such adverse party.' " *Bryant v. Conrad*, 8th Dist. No. 73408 (Dec. 10, 1998), quoting *Shrader* at 278.

{¶ 15} Appellant's deposition consists of 98 pages of testimony. As is relevant here, the motion to compel directed the trial court to seven exchanges in which appellant asserted her Fifth Amendment privilege and refused to answer questions. The first exchange occurred on page five when appellant's counsel lodged an objection to the third question of the deposition. The exchange is as follows:

> Q. Would you please state your name, your full name.
>
> A. Raquel Nunez Vega.
>
> Q. And have you ever gone by any other names?
>
> A. Yes. Right now I am working under another name.
>
> Q. And what name is that?

Appellant's counsel first objected on the basis of relevance. After arguing about the propriety of the objection, appellant's counsel objected on the basis of the Fifth Amendment and instructed appellant not to answer.

{¶ 16} The next exchange occurred on pages seven and eight:

> Q. And what's your date of birth?
>
> A. Yes. It is January 15 of '63.
>
> Q. And have you used any other date of births?
>
> [Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]
>
> * * *
>
> Q. Do you have a Social Security number?

Appellant's counsel again objected on the basis of relevance and the Fifth Amendment and instructed appellant not to answer.

{¶ 17} Thereafter, on pages 19 and 20, appellant was asked the names of her children that lived with her at her prior address, and the following exchange occurred:

Q. At that time who were the other two children?

A. Marcos Eduardo.

Q. How do you spell that?

A. M-A-R-C-O-S, E-D-U-A-R-D-O.

Q. How old is Marcos?

A. Oh, let's see, 21. 21. He's going to be 23. He's 22, he will
be 23.

Q. Where does Marcos live?

[Appellant's counsel]: Objection, relevance. I'm going to say
this. I'm going to object to your harassing line of questioning,
trying to intimidate my client by asking her to identify all of
her relatives that have no bearing on this case.

{¶ 18} Thereafter, on page 22, appellant was being asked about her prior residences and who lived with her at those addresses, whereupon the following exchange occurred:

Q. And where is Karla? How do I get in touch with Karla?

A. She's in Mexico.

Q. When did she move back to Mexico?

After appellant's counsel objected on the basis of relevance, counsel for both parties argued about the matter whereupon appellant's counsel objected on the basis of the Fifth Amendment and instructed appellant not to answer.

{¶ 19} Though counsel for appellee argued the information was relevant because it concerned people who lived in appellant's house and people that associated with appellant at the time of the events at issue, appellant's counsel instructed his client not to answer based on an assertion of her Fifth Amendment privilege. On pages 24 and 25, when

reviewing appellant's educational background, appellant indicated she grew up in Mexico, and the following exchange occurred:

Q.  How long did you live in Mexico?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

Q.  When did you move to the United States?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

Q.  I take it based upon your attorney's objections you're not a U.S. citizen.  I guess I should say, are you a U.S. citizen?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

Q.  Can you tell me what your immigration status is?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

[Appellant's counsel]: If you continue this harassing line of questioning, I will unilaterally terminate this deposition.

{¶ 20} On pages 26 and 27, the following exchange took place:

Q.  And where were you prior to moving to Columbus?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

Q.  How long have you lived – when I say Columbus, I mean the Columbus area. How long have you lived in the Columbus area?  You know, Whitehall, Groveport.

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

Q.  Do you currently have a driver's license?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

* * *

Q. Did you have a driver's license back in June – April – we'll say 2011. Did you have a driver's license then?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

* * *

Q. Have you had a driver's license, any driver's license from any state, whether it's Ohio or wherever?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

{¶ 21} Thereafter, the deposition proceeded, and, though there were multiple objections by appellant's counsel on the basis of relevance and speculation, the next challenged exchange occurred on pages 72 and 73:

Q. Okay. Let's talk about when you made the final payment.

A. Uh-huh.

Q. Okay. Did you take the car home?

A. No.

Q. Why?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

{¶ 22} The last challenged exchange occurred on page 85 of the deposition as follows:

Q. Let's talk about May. You saw your car.

A. Yes.

Q. Okay. Where was it?

A. I don't know the body shop. The body shop is in a certain area.

Q. Okay. Where was it parked?

A. Inside. Inside.

Q. Why didn't you take it in May?

[Objection on the basis of relevance and Fifth Amendment, witness instructed not to answer.]

[Appellee's counsel]: As to why she didn't take it in May?

[Appellant's counsel]: Yes.

[Appellee's counsel]: That's very important, Dan, as to whether it's an issue of abandonment of the vehicle.

[Appellant's counsel]: I disagree, and I'm instructing her not to answer.

{¶ 23} The trial court concluded appellant, the plaintiff in this case, was refusing to answer questions which the trial court believed were "standard in almost any deposition," based on an undefined Fifth Amendment privilege. (Apr. 3, 2014 Tr. 39.) Thus, contrary to appellant's assertion otherwise, the trial court did not conclude that appellant could not assert her Fifth Amendment privilege at a civil deposition. Rather, the trial court concluded appellant's assertion of her Fifth Amendment privilege in *these instances* was not a valid one.

{¶ 24} To be entitled to remain silent, there must be a valid assertion of the Fifth Amendment privilege. *Morganroth*. It is not for the witness, but it is for the court, to decide whether a witness's silence is justified. *Id.* As stated in *Bawtenheimer*, to determine whether a valid Fifth Amendment privilege has been asserted, a court first asks if the information is incriminating in nature. *Id.* at 266-67. It may be evident on its face, in light of the question asked and the circumstances of its asking, and if it is facially evident, the inquiry ends. *Id.* If it is not facially evident, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof. *Id.* If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. *Id.* As to this, the proper test simply

assesses the objective reasonableness of the target's claimed apprehension of the prosecution. *Id.*

{¶ 25} The setting in which appellant, the plaintiff, asserted her Fifth Amendment privilege was her civil pre-trial discovery deposition by the opposing party's counsel. The questions sought information pertaining to appellant's background, the location and identity of potential witnesses, ownership of the vehicle, and other specific circumstances surrounding appellant's claims. We cannot say it is facially evident in light of the questions and the setting in which they were asked that the information is incriminating in nature as none of the questions call for the admission of a criminal act. Nor can we say appellant demonstrated the potential incriminating nature by further contextual proof or that appellant provided a sufficient possibility of criminal prosecution, all things considered, to trigger the need for constitutional protection. *Id.*

{¶ 26} "[T]he [Fifth Amendment] privilege against self-incrimination may not be invoked merely by asserting that the information sought by the government may *in a general sense* be incriminatory." (Emphasis added.) *Id.* at 266. Additionally, as we previously stated, "[w]hether there is a sufficient hazard of incrimination is a question for the court which is asked to enforce the privilege." *Id.* In this case, the objections lodged by appellant's counsel at her deposition were consistently based on relevance, but when appellee's counsel argued that an objection based on relevance did not permit a witness to refuse to answer, appellant's counsel asserted appellant's Fifth Amendment privilege without any specificity regarding the same.

{¶ 27} In her memorandum contra to appellee's motion to compel, appellant again failed to set forth any specific basis for the Fifth Amendment assertion but, rather, argued generally that each assertion was appropriate because the questions were "irrelevant questions about her national heritage" for which she asserted "her constitutional right to refuse to answer." (Memorandum Contra, 1.) Though citing to an article from the American Civil Liberties Union Foundation Women's Rights Project that indicates a witness may assert a Fifth Amendment privilege for fear of prosecution regarding the "use of false identification documents, failure to depart the U.S. within 90 days of an order of deportation, unlawful entry or attempted entry into the country, unlawful re-entry after being deported or denied admission, and false representation of self as a U.S. citizen,"

appellant's memorandum contra is devoid of *any* indication that she possesses *any* fear of prosecution of *any* criminal act.  (Memorandum Contra, 4-5.)  Similarly, at the hearing on the motion to compel, appellant's counsel provided no additional specificity other than to assert that the questions by appellee's counsel were "clearly meant to just intimidate and harass my client about her national heritage."  (Apr. 3, 2014 Tr. 14-15.)

{¶ 28} To this court, appellant contends she has an absolute right to assert her Fifth Amendment privilege at a pre-trial deposition.  However, for such to constitute a valid assertion of her Fifth Amendment right, a basis for the same must be established.  "The witness must supply 'such additional statements under oath and other evidence' in response to each question so as to enable the court to identify the nature of the criminal charge for which the witness fears prosecution."  *Rebecca S.*, quoting *Morganroth* at 167.  "A witness must, however, show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution."  *Morganroth* at 167.  Not only does this record fail to show a "real danger" of prosecution, but, also, this record is devoid of *any* evidence that appellant possesses any fear of prosecution for any criminal act.  Though appellant contends her assertions were valid, to find in appellant's favor in this case would require us to find that when a plaintiff refuses to answer questions in a deposition based on a general assertion of the Fifth Amendment privilege, that assertion is valid solely because the plaintiff testified he or she moved to the United States from another country and is, according to appellant's memorandum contra to appellee's motion to compel, "Spanish-speaking."  We believe state precedent, as well as federal, makes clear that we cannot so find.

{¶ 29} Though vaguely contending that responding to the questions in appellee's motion to compel might tend to incriminate her, appellant has not suggested any way in which the trial court's order poses a genuine threat to her Fifth Amendment privilege against self-incrimination, and appellant has not demonstrated that she has reasonable cause to apprehend a real danger of incrimination if she were to respond to the questions raised in the motion to compel.  Accordingly, we find no error in the trial court's order granting appellee's motion to compel, and we overrule appellant's first assignment of error.

### C.  Second Assignment of Error

{¶ 30} In her second assignment of error, appellant asserts the trial court erred in awarding sanctions against appellant and her counsel for the assertion of her Fifth Amendment privilege.

{¶ 31} First, we note the trial court has yet to issue a monetary award of sanctions. At the hearing on the motion to compel, as well as the entry granting the motion to compel, the trial court stated that appellant and her counsel would be responsible for paying appellee's reasonable expenses, including attorney fees, in obtaining the order. However, the trial court also stated that a subsequent hearing would be held to determine the amount to be paid.  As held in *Randall*, generally the granting or denying of sanctions accompanying a discovery order is not a final, appealable order.  *Id.* at ¶ 19, citing *Longo v. Bender*, 11th Dist. No. 2006-G-2699, 2006-Ohio-2239, ¶ 4 ("The granting of sanctions accompanying a discovery order is not final and appealable."); *Chuparkoff v. Farmers Ins. of Columbus, Inc.*, 9th Dist. No. 22083, 2004-Ohio-7185, ¶ 15 ("a denial of sanctions accompanying a discovery order is not final and appealable").

{¶ 32} Because the issue raised in appellant's second assignment of error is not yet ripe for review, we dismiss appellant's second assignment of error.

### D.  Third Assignment of Error

{¶ 33} In her third assignment of error, appellant contends the trial court's judgment entry is impermissibly vague.  According to appellant, it is unclear what questions appellant was not permitted to refuse to answer on the basis of her Fifth Amendment privilege and what she and her counsel are required to do to avoid future sanctions.

{¶ 34} As we have previously set forth, the motion to compel outlined seven exchanges in which appellee believed the Fifth Amendment privilege was improperly asserted.  In her memorandum contra, as well as during the hearing on the motion to compel, appellant argued that each assertion was valid.  The trial court granted appellee's motion to compel in toto, specifically concluding that appellant improperly invoked a Fifth Amendment privilege and that appellant was not substantially justified in refusing to answer those questions.  The court ordered appellant to answer those questions and answer all questions without improperly asserting her Fifth Amendment privilege.

{¶ 35} We do not believe the order is impermissibly vague. It requires appellant to answer the questions raised in appellee's motion to compel, but it also allows appellant to assert her Fifth Amendment privilege during her subsequent deposition as long as she does so properly. Whether any future assertions of her Fifth Amendment privilege will be proper is something that cannot be answered or predicted at this juncture as it will be dependent on a variety of factors that have been discussed infra. Additionally, the ultimate admissibility of any answer appellant may give and the consequences of declining to answer any specific question are issues for the trial court to resolve if and when called to do so.

{¶ 36} Accordingly, we overrule appellant's third assignment of error.

### E.  Fourth Assignment of Error

{¶ 37} In her fourth assignment of error, appellant asserts the trial court erred in granting appellee's motion to compel because appellee failed to present any admissible evidence in support of his motion. Attached to the motion to compel were several transcript pages containing the challenged exchanges. Because the pages were uncertified, appellant contends they were not properly before the court such that the trial court had no evidence before it to justify granting the motion to compel.

{¶ 38} As previously indicated, the trial court held a hearing on appellee's motion to compel. At that hearing, appellee's counsel stated that, at the time they filed the motion to compel, the transcript had just been made available, but the court reporter had not yet completed the signature page and the review by appellant. Thus, appellee's counsel stated "[t]hat's now, I understand, been done, and we will have the whole transcript filed with the Court. I have a copy of the transcript, and I'm happy to provide to the Court." (Apr. 3, 2014 Tr. 27-28.)

{¶ 39} Reading from the deposition transcript at the hearing, appellee's counsel read into the record the challenged exchanges from the deposition. Appellee does not assert that the portions of the transcript inaccurately reflected what occurred at the deposition. Instead, it is undisputed that appellant's counsel instructed appellant not to answer various questions during the deposition based on an assertion of her Fifth Amendment privilege. Given the state of this record, we cannot conclude the trial court had nothing before it from which to enter an order on the motion to compel.

{¶ 40} Accordingly, we overrule appellant's fourth assignment of error.

### F. Fifth Assignment of Error

{¶ 41} In her fifth assignment of error, appellant asserts the trial court erred in granting appellee's motion to compel because appellee failed to make a reasonable attempt to resolve the discovery dispute before filing the motion. This court has held that a trial court does not abuse its discretion in denying a motion to compel when the moving party has failed to comply with the requirements of Civ.R. 37(E).[2] *See, e.g., Deutsche Bank Natl. Trust Co. v. Doucet,* 10th Dist. No. 07AP-453, 2008-Ohio-589, ¶ 20, citing *513 E. Rich St. Co. v. McGreevy,* 10th Dist. No. 02AP-1207, 2003-Ohio-2487, ¶ 11, citing *Briggs v. Glenbeigh Health Servs.,* 8th Dist. No. 77395 (Nov. 30, 2000) (affirming denial of motion to compel where movant failed to informally resolve dispute). Unlike those cases in which a trial court denied a motion to compel without a hearing, here we are presented with a scenario in which the trial court granted a motion to compel after having an oral hearing on the issue.

{¶ 42} At the hearing on the motion to compel, appellee responded to appellant's argument that sufficient efforts to resolve the matter without court intervention had not been made. Appellee's counsel stated that the deposition transcript was "replete" with "repeated efforts" to revolve these issues, but after "it was made clear that [appellant] was not going to answer the questions, and the only recourse we have at that point is to ask the Court to intercede." (Apr. 3, 2014 Tr. 4.) Additionally, appellee's counsel stated that during the deposition, he suggested the parties contact the trial court in an effort to resolve the matter at that time. Appellee's counsel stated:

> I did try to resolve it. I called down here to the courthouse. You were gone. Karen indicated that the Court doesn't entertain these things, to move on, and I understand why because usually you get the answer if it's an objection, answer the question, and you move on. It didn't happen here.

(Apr. 3, 2014 Tr. 29.)

---

[2] Civ.R. 37(E) provides that before filing a motion authorized by Civ.R. 37, "the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought."

{¶ 43} We conclude the record demonstrates appellee's compliance with Civ.R. 37(E). Moreover, as stated by the Ninth District Court of Appeals in *Spragling v. Oriana House, Inc.*, 9th Dist. No. 23501, 2007-Ohio-3245, the purpose of Civ.R. 37(E) is to endorse the self-regulating aspect of discovery and to require court intervention only as a last resort. *Id.* at ¶ 7, citing *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, ¶ 10 (2d Dist.). While a deficient showing under Civ.R. 37(E) could justify the denial of a motion to compel, " 'once a trial court has gone to the trouble of conducting a hearing on a motion and issuing a decision resolving the parties' dispute, as the trial court has done in this case, we see no useful purpose in invoking Civ.R. 37(E)—which is intended to benefit the trial court—to reverse its judgment and force the court to begin its work again after the filing of a renewed motion to compel.' " *Id.*, quoting *Unklesbay* at ¶ 10. Accordingly, we overrule appellant's fifth assignment of error.

## IV. CONCLUSION

{¶ 44} Having dismissed appellant's second assignment of error and overruled the remaining, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

_____