**C. Paul ROGERS, Plaintiff-Appellee,**

v.

**R. Howard WEBSTER,
Defendant-Appellant.**

**Nos. 84–1381, 84–1382.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1985.

Decided Nov. 7, 1985.

Donald S. Young, J. Bruce Donaldson (argued), Dykema, Gossett, Spencer, Goodnow and Trigg, Bloomfield Hills, Mich., for defendant-appellant.

Stephen Wasinger, Peter M. Alter, Gerard Mantese (argued), Detroit, Mich., for plaintiff-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and NEESE, Senior (retired District) Judge.*

PER CURIAM.

These are consolidated appeals from orders adjudging the appellant in civil contempt of the District Court and fining him $10,000 for each day he fails to comply with two orders of that Court. Because we are not satisfied that the procedures followed in the District Court accorded appropriate recognition to the appellant's assertion of his Fifth Amendment privilege against compulsory self-incrimination, we vacate the contempt orders and remand the cases for further proceedings.

### I.

The appellee Mr. C. Paul Rogers, a citizen of Michigan, sued the appellant Mr. R. Howard Webster, a citizen of Canada, in the District Court for the Southern District of Michigan for wrongful termination of his employment with a Michigan corporation. *See* 28 U.S.C. § 1332(a)(2). Following a trial by jury, judgment was entered against Mr. Webster for $1,000,000.

Because Mr. Webster failed to post a supersedeas bond, the judgment was not stayed pending his appeal to this Court,[1] *see* Fed.R.Civ.P. 62(d), and Mr. Rogers proceeded to execute thereon. The District Court, upon application of Mr. Rogers and in aid of its execution, ordered Mr. Webster to produce certain documents on post-judgment discovery and also to deliver certain stock certificates (representing shares he held in two Canadian corporations) to the clerk of the District Court for the eventual purpose of judicial sale.

Mr. Rogers, who contended Mr. Webster had failed to produce all of the documents called for by the discovery order, moved the District Court for an order directing Mr. Webster to show cause why he should not be held in civil and criminal contempt for disobedience of that order. The motion was granted, and the District Judge assigned a single hearing on both the civil and criminal contempt charges and ordered Mr. Webster to file "his responsive brief" at least 10 days prior to that hearing.[2]

Mr. Webster filed a responsive brief, addressing only the criminal aspect of the pending contempt proceedings. In his brief, he asserted that the burden was on Mr. Rogers to overcome the presumption of his innocence and to establish his contempt beyond a reasonable doubt; that the constitutional protections afforded defendants in criminal proceedings, including the privilege against compulsory self-incrimination, were applicable; and that, in order to safeguard his constitutional rights, the criminal-contempt matter should be concluded prior to any hearing of the civil-contempt matter.

Three days thereafter counsel for Mr. Rogers advised the District Judge by letter that he was withdrawing for the present his motion to hold Mr. Webster in criminal contempt and that the assigned hearing would be limited to the civil-contempt charge.[3] Mr. Rogers filed thereupon a second motion, this time seeking an order directing Mr. Webster to show cause why he should not be held in civil and criminal contempt for his failure to deliver the stock certificates to the clerk as ordered. A show-cause hearing, limited to the civil contempt aspect of the motion, was assigned, and the District Judge ordered that Mr.

---

* Honorable C.G. Neese, Senior Judge, of Nashville, Tennessee who retired as a United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. The judgment against Mr. Webster was affirmed in an unpublished *per curiam*. *See Rogers v. Webster,* 762 F.2d 1011 (6th Cir.1985) (table).

2. The District Court also appointed Mr. Rogers' counsel to prosecute the criminal contempt charges on behalf of the Court. *See* Fed.R.

Crim.P. 42(b). This order preceded by more than a year our adoption of the rule that "in this circuit an attorney for a party in underlying litigation may not conduct criminal contempt proceedings as sole or primary counsel." *Polo Fashions v. Stock Buyers Intern.,* 760 F.2d 698, 705 (6th Cir.1985).

3. Of course, the District Court had already ordered that the hearing encompass both the civil and criminal aspects of the pending motion.

Webster's "responsive pleadings, briefs, and/or other documents" be filed at least four days prior to that hearing.

Counsel for Mr. Webster then submitted to the District Judge two proposed orders, dismissing the pending criminal-contempt charges. In a cover letter, counsel reiterated Mr. Webster's position, that it was "constitutionally inappropriate" to proceed with the civil-contempt matters under the criminal matters were concluded, and that entry of the proposed orders would permit Mr. Webster "to defend fully and vigorously the civil contempt matters." The District Judge declined to enter the proposed orders and, by subsequent letter, Mr. Webster's counsel informed the Court that his client "must respectfully decline to file any brief or document in response to the civil contempt motions prior to final disposition of the criminal contempt matters in order to avoid prejudicing Mr. Webster's criminal and constitutional rights."

A hearing was convened on April 6, 1984 for the purpose of deciding whether Mr. Webster was in civil and criminal contempt of the Court for disobeying the discovery order and whether he was in civil contempt for failing to comply with the delivery order. The District Judge expressed concern thereat over Mr. Webster's failure to file a response to any of the pending contempt charges and found he was "in direct defiance" of the order to respond.

The Court inquired of Mr. Webster's counsel how the filing of a response might prejudice any of his client's constitutional rights. Such counsel represented that any response of Mr. Webster "would have been a detailed factual response, including affidavits and other materials which would be put forward, which were potentially, until the criminal matter was disposed of, of use in the criminal proceeding."

The District Judge, in an ostensible effort to allay Mr. Webster's Fifth Amendment concerns, dismissed the pending criminal-contempt charge, making it clear such dismissal was without prejudice, and that the criminal charge would be revived at the end of the hearing. Mr. Webster's counsel thereupon tendered seven affidavits, supporting his client's contention that he had complied fully with the discovery order by producing all documents over which he had custody or control and that any further compliance was impossible because he lacked the ability to produce any remaining documents. Mr. Webster was allowed to file those affidavits, but the District Judge refused to consider them, on the ground they were not filed prior to the hearing as had been ordered.

Counsel for Mr. Webster attempted then to call Mr. Rogers' counsel to the witness stand to cross-examine him on the verified statements he had made in support of Mr. Rogers' allegations of contempt; the Court refused to permit such cross-examination, ruling that Mr. Webster was "in default" for failing to file an answer or response to the civil-contempt charges, and that he would not be allowed to present any evidence at the hearing because he had not filed timely any affidavits which countered the assertions of Mr. Rogers' verified motions.

No evidence was admitted at the hearing, and Mr. Webster was adjudged in civil contempt on the basis solely of the record as it then existed. Mr. Webster was assessed a fine of $10,000 a day until he complies with both the discovery order and the delivery order.

## II.

■ Civil contempt is a civil action and governed by the Federal Rules of Civil Procedure. 3 C. Wright, Federal Practice and Procedure: Criminal § 705, at 829 (1982). The pleading requirements of Rule 8 of those Rules apply in civil-contempt proceedings, *Shakman v. Democratic Organization of Cook Cty.*, 533 F.2d 344, 352 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), and thereunder, the party accused of contemptuous conduct "shall admit or deny" the averments against him, and those averments "are admitted when not denied" in a responsive pleading. Fed.R.Civ.P. 8(b), (d).

We do not doubt that, where the defendant in a civil-contempt proceeding fails to file a responsive pleading, admitting or denying the accusations made against him, the District Court would be justified ordinarily in adjudicating him in contempt solely on the basis of the averments of his opponent (which would be deemed admitted under Rule 8(d)). Likewise, we have no quarrel with the general view, that "[a] trial court may in a [civil] contempt proceeding narrow the issues by requiring that affidavits on file be controverted by counter-affidavits and may thereafter treat as true the facts set forth in uncontroverted affidavits." *Hoffman, Etc. v. Beer Drivers & Salesmen's Etc.*, 536 F.2d 1268, 1277 (9th Cir.1976); *see United States v. Danenza*, 528 F.2d 390, 393 (2d Cir.1975).

Here, however, in lieu of answering the specific averments of his accuser, or filing such counter-affidavits, Mr. Webster invoked his Fifth Amendment privilege against compulsory self-incrimination.[4] Thus, our question is whether the usual rules of procedure "must give way in order to protect the defendant's constitutional right to avoid self-incrimination." *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 926 (7th Cir.1983).

The Constitutional privilege against compulsory self-incrimination "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution [5] but also privileges him not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings," *In re Morganroth*, 718 F.2d 161, 164–165 (6th Cir.1983); it protects "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–1494, 12 L.Ed.2d 653 (1964). In this context "penalty" means "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'." *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967).

We agree with the sense of the Seventh Circuit in *National Acceptance* that, when a defendant in a civil proceeding invokes properly his Fifth Amendment privilege against compulsory self-incrimination in lieu of answering the averments contained in the pleading of his adversary, the District Court should treat his claim of privilege as the equivalent of a specific denial and put the plaintiff to his proof of the matter covered by the "denial." *National Acceptance Co. of America v. Bathalter, supra; accord De Antonio v. Solomon*, 42 F.R.D. 320, 322 (D.Mass.1967). An assertion of the privilege, however, does not give the defendant absolute discretion to circumvent the provisions of Rule 8(d), *cf. In re Sterling-Harris Ford, Inc.*, 315 F.2d 277, 279 (7th Cir.1963), *cert. denied sub nom. Silverstein v. Phelps*, 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 50 (1963); the person who claims the Fifth Amendment privilege is not the sole judge of its validity, and, if it clearly appears that he is mistaken as to its justification, the district court may require him to answer. *In re Morganroth, supra*, 718 F.2d at 167.

The Court below did not rule specifically on the validity of Mr. Webster's claim of privilege, and we indicate no opinion whatever in that regard. Even if Mr. Webster's assertion of privilege had been overruled, we believe he would have been

---

4. We do not endorse the method by which Mr. Webster invoked his privilege against compulsory self-incrimination. Instead of asserting it in general fashion by letter the better procedure would have been for Mr. Webster to have filed a formal answer or response in which he asserted the privilege as to each averment of Mr. Rogers which called for an admission or denial under Rule 8(b). Nonetheless, it is clear that Mr. Webster was invoking the privilege, and the District Court did not rule that his method of doing so was improper.

5. We have no occasion to consider the Fifth Amendment protection afforded the accused in a criminal proceeding, since only the civil-contempt proceedings against Mr. Webster are before us.

entitled then to an opportunity to respond to the contempt charges of his adversary.[6] When the Fifth Amendment privilege is invoked in a judicial proceeding, the person claiming its protection ordinarily "receives a judicial ruling at that time on the validity of his claim, and he has an opportunity to reconsider it before being [penalized] for refusal to answer." *Garner v. United States*, 424 U.S. 648, 663, 96 S.Ct. 1178, 1187, 47 L.Ed.2d 370 (1976).[7] Not affording one who asserts the privilege an opportunity to answer, once his claim of privilege has been rejected, is to penalize him merely for asserting the privilege.

Mr. Rogers urges any error in the District Court was harmless, because Mr. Webster has admitted he "declined" to comply with the delivery order, and his disobedience of that order alone is sufficient to support the $10,000-a-day fine (which was to accrue until he complied with *both* orders of the District Court). Even if Mr. Webster had conceded he was in contempt for not obeying the delivery order, he was entitled still to offer matters in explanation of his conduct or in mitigation of any coercive punishment. *Cf. Groppi v. Leslie*, 404 U.S. 496, 503, 92 S.Ct. 582, 586-587, 30 L.Ed.2d 632 (1972).

■ While wilfulness is not an element of civil contempt, the contemnor's state of mind, such as his good faith or his reliance on the advice of counsel, is relevant in mitigation of any penalty. *TWM Mfg. Co.,*

*Inc. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983). We have no way of knowing what might have been the outcome of the proceedings below had Mr. Webster not been deemed in default and had he been permitted to be heard fully in opposition of the contempt charges; therefore, we cannot conclude the error was harmless.

The orders of the District Court, adjudicating the appellant in civil contempt of court, are

VACATED, and these cases are REMANDED to the District Court for further proceedings consistent with this opinion.

---

**6.** Mr. Rogers, who sought to cause the Court to hold Mr. Webster in civil contempt, had the burden of establishing that Mr. Webster had disobeyed the orders of the District Court and in so doing, Mr. Rogers had to " 'overcome a heavy burden of proof.' " *Consolidation Coal Co. v. Local U. No. 1784, U.M.W.*, 514 F.2d 763, 766 (6th Cir.1975), quoting *Schaffler v. Local 1291, Internat'l Longshoremen's Ass'n*, 292 F.2d 182, 190 (3d Cir.1961). We have required clear and convincing evidence of such a violation. *N.L.R.B. v. Teamsters, Chauffeurs, Helpers, Etc.*, 592 F.2d 921, 928 (6th Cir.1979); *N.L.R.B. v. Local 5881, United Mine Workers of America*, 323 F.2d 853, 854 (6th Cir.1963). Mr. Webster, on the other hand, bore the burden of producing evidence that he lacked the ability to comply with one or both of the orders. *United States v. Rylander*, 460 U.S. 752, 757–758, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983).

Here, the effect of the procedure employed by the District Court was to relieve Mr. Rogers of his burden of proving Mr. Webster's contempt by clear and convincing evidence and to foreclose Mr. Webster's presenting any evidence in defense or mitigation. To do so, merely because Mr. Webster had claimed his constitutional privilege, certainly made his resort to the privilege "costly." 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2018, at 148 (1970).

**7.** "In most situations, such as in-court testimony, a witness who asserts the privilege is afforded a ruling by the trial court on the validity of the assertion. If the trial court rules that the claim is not a valid one, the witness is generally as a matter of practice if not of absolute right given the opportunity to testify before contempt penalties are asserted." McCormick on Evidence § 136, at 336 (3d ed. 1984).