**Haas v. Bowman**

2

C.P. of Allegheny County, nos. GD01-022324, GD02-005367, no. GD01-006043.

*Alan E. Cech,* for plaintiffs Haas.

*Peter V. Marcoline Jr.,* for plaintiffs Bricker.

*Dennis M. Moskal* and *Gregg R. Zegarelli,* for plaintiffs Elovitz.

*Michael A. Murphey,* for defendant Bowman.

*Jerome DeRiso,* for defendants Atkinson and Allied Track Inc.

*Richard F. Rinaldo,* for defendant Scalera.

*Francis C. Sichko,* for defendant Martin.

*Robert B. Smith* and *Lindsay S. Mork,* for defendants Miller.

WETTICK, *J.,* June 4, 2003—This opinion and order of court considers the requests of plaintiffs in these civil proceedings for sanctions against defendants who have asserted their Fifth Amendment privilege against self-incrimination in response to discovery requests.

In *Haas,* plaintiffs filed a complaint against John J. Bowman trading and doing business as Bowman & Associates in which they allege that they retained his services to render tax planning and investment services which they required in connection with a trust established for Melissa Haas from the proceeds of a medical malpractice claim. The complaint includes allegations that plaintiffs paid $69,500 to defendant against expected income tax liability which defendant converted to his own use; defendant converted to his own use $48,650 that plaintiffs paid for the creation of a family limited partnership which defendant never formed; plaintiffs gave to defendant in excess of $136,000 to be invested on their behalf that defendant converted to his own use; and defendant received in excess of $163,000 for tax and financial planning services that he never provided.

4

Defendant filed an answer and new matter, which he verified, in which he denied the allegation of wrongdoing in the complaint. For example, he specifically denied the allegation that he had converted approximately $69,500 paid for expected income tax liability by pleading that he never advised plaintiffs to make deposits against expected income tax liability and that the money was for professional services not covered under the professional services agreements. He responded to the allegations regarding payments of $48,650 for a family limited partnership by alleging that the limited partnership was never executed because of continued modifications sought by plaintiffs. He responded to the allegations regarding the payment of $136,000 for investment purposes by alleging that the money was paid for professional services.

After his answer was filed, defendant appeared for his deposition. At the deposition, he invoked his Fifth Amendment privilege as to any questions involving this litigation.

In *Bricker,* on August 9, 2002, plaintiffs filed a multiple count complaint against several defendants, including Robert Atkinson and Allied Track Inc., based on allegations that plaintiffs lost their entire investments as a result of fraud in the sale of unregistered securities, fraudulent misrepresentations and conversion. On August 22, 2002, the Pennsylvania Attorney General's office filed criminal charges against Robert Atkinson for allegedly engaging in a scheme to defraud numerous investors in connection with a railroad salvage operation.

On September 24, 2002, Mr. Atkinson and Allied Track Inc. filed a verified answer to plaintiffs' complaint deny-

ing a majority of the averments but fully or partially admitting other averments. On January 16, 2003, defendants Robert C. Atkinson and Allied Track Inc. filed responses to plaintiffs' first set of interrogatories and plaintiffs' first request for production of documents directed to both defendants. They answered 10 interrogatories but refused to answer other interrogatories, asserting the privilege against self-incrimination. They responded to requests to produce documents by providing certain documents and raising the Fifth Amendment privilege as to other document requests.

In *Elovitz,* plaintiffs allege that defendant Louis Miller had engaged in misconduct when providing consulting and management services. Allegations included the misuse of a credit card, directing payments that should have been made to plaintiffs to third parties, forging signatures on customer checks and forging a deed. Mr. Miller filed an amended answer, new matter and counterclaim, which he verified, that denied the allegations of wrongdoing set forth in the complaint. The new matter includes allegations that any purchases made by Mr. Miller on plaintiffs' credit cards were authorized by plaintiffs. Subsequently, Mr. Miller furnished verified responses to plaintiffs' request for admissions in which he denied the allegations of wrongdoing. Thereafter, Mr. Miller filed a motion for protective order in which he requested that further discovery, including his deposition, be prohibited on the basis of his privilege against self-incrimination. The motion alleges that there are outstanding criminal proceedings against Mr. Miller based on the same allegations that plaintiffs raise in these civil proceedings.

## I.

In each of these cases, plaintiffs seek court orders (1) compelling defendants to furnish the information that defendants have withheld by asserting a Fifth Amendment privilege against self-incrimination or (2) imposing appropriate sanctions.

Defendants contend that plaintiffs are not entitled to any relief because a party who asserts his or her Fifth Amendment privilege cannot be penalized for exercising this constitutional right. Plaintiffs offer the following responses to this contention:

### 1.

By filing answers addressing the merits of the plaintiffs' complaints, defendants have waived their right to assert a Fifth Amendment privilege as to any matters that their answers addressed;

### 2.

Where a defendant has responded to discovery requests, the defendant has waived his or her right to assert the Fifth Amendment privilege as to the subject matter which the discovery requests addressed;

### 3.

Once a defendant asserts a Fifth Amendment privilege to a discovery request governing any matter that the defendant specifically denied in the answer to the complaint, the denial should be stricken and the allegation should be deemed to be admitted. See Pa.R.C.P. 1029(b) which provides that averments in a pleading to which a

responsive pleading is required are admitted when not denied specifically or by necessary implication;

## 4.

As a sanction for failure to provide discovery, the court should enter an order (1) barring the defendant from testifying at trial or submitting his or her affidavit in response to a motion for summary judgment and (2) permitting the fact-finder to draw an inference that whatever testimony a party asserting the Fifth Amendment would have given would have been unfavorable;

## 5.

The corporation in the *Bricker* litigation has improperly raised a Fifth Amendment privilege because the Fifth Amendment protects only individuals; and

## 6.

Defendants are improperly raising a Fifth Amendment privilege to withhold documents prepared in the ordinary course of business.

## II.

In discussing the relief which plaintiffs seek based on defendants' exercise of the Fifth Amendment privilege in response to discovery requests, I will rely primarily on principles that are well-established in the federal courts because Pennsylvania case law is not as well-developed.[1]

---

1. Article 1, Section 9 of the Pennsylvania Constitution provides that a person "cannot be compelled to give evidence against himself." The Fifth Amendment to the United States Constitution provides that

While the United States Supreme Court does not allow the imposition of sanctions in civil proceedings that make the assertion of the Fifth Amendment privilege too costly (*Spevack v. Klein,* 87 S.Ct. 625, 628 (1967)), the assertion of the Fifth Amendment privilege in civil proceedings may cause some disadvantage to the party who withholds relevant information (*Baxter v. Palmigiano,* 96 S.Ct. 1551, 1557-58 (1976)). In *Mitchell v. United States,* 119 S.Ct. 1307, 1315 (1999) (citations omitted), the court said:

"This court has recognized 'the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them,' at least where refusal to waive the privilege does not lead 'automatically and without more to [the] imposition of sanctions.' . . . The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed."

While federal case law, based on these rulings of the United States Supreme Court, permits sanctions (fre-

---

no person "shall be compelled in any criminal case to be a witness against himself." Since 1964, the protections of the Fifth Amendment have governed state court proceedings. *Malloy v. Hogan,* 84 S.Ct. 1489 (1964). Consequently, the privilege against self-incrimination is governed by the United States Supreme Court case law construing the Fifth Amendment unless a witness claiming a privilege against self-incrimination can establish that Article 1, Section 9 of the Pennsylvania Constitution provides greater protection. See generally, *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995). In this case, none of the defendants is claiming that Article 1, Section 9 of the Pennsylvania Constitution provides greater protection.

quently referred to as "remedies") to be imposed in civil actions based on a party's assertion of the Fifth Amendment privilege, such sanctions must be limited to what is necessary to prevent another party from being unduly disadvantaged. Sanctions may not be automatically imposed whenever a party asserts his or her Fifth Amendment protections in pleadings or responses to discovery requests. The bottom line in civil actions is that a price can be paid for exercising the Fifth Amendment privilege provided it is tied to the potential harm to other parties from the failure to provide relevant information. In *Serafino v. Hasbro Inc.,* 82 F.3d 515, 518 (1st Cir. 1996), the court, in upholding the trial court's dismissal of the plaintiff's complaint because one of the plaintiffs invoked his Fifth Amendment privilege, described the standard as follows:

"The Supreme Court has indicated that the assertion of the privilege may sometimes disadvantage a party. See *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976) (allowing adverse inferences to be drawn from a *civil* party's assertion of the privilege); *Flint v. Mullen,* 499 F.2d 100, 104 (1st Cir. 1974) ('[N]ot every undesirable consequence which may follow from the exercise of the privilege against self-incrimination can be characterized as a penalty.'). We think that in the civil context, where, systemically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, see *United States v. Parcels of Land,* 903 F.2d 36, 44 (1st Cir. 1990), it also must ensure that the opposing party is not unduly disadvan-

taged. See *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 577 (1st Cir. 1989) (affirming district court's refusal to allow defendant to testify at trial when he asserted Fifth Amendment privilege during discovery). After balancing the conflicting interests, dismissal may be the only viable alternative. [FN5]

"We reiterate that the balance must be weighed to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. See *S. E. C. v. Graystone Nash Inc.,* 25 F.3d 187, 192 (3d Cir.1994); *Wehling,* 608 F.2d at 1088. As correctly delineated by the district court in this case, 'the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it.' See *Black Panther Party v. Smith,* 661 F.2d 1243, 1272 (D.C. Cir. 1981), *vacated mem.,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982) (enunciating similar balancing approach). Having determined that the district court could, within its discretion, dismiss this case, and that it utilized the proper balancing test, we now evaluate the balancing itself for abuse of discretion. See *Parcels of Land* 903 F.2d at 44.

"FN5. Though dismissal has rarely been imposed or affirmed, a number of courts have acknowledged the court's power to dismiss even in the face of a party's proper assertion of the privilege. See *e.g., Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084, 1087 n. 6 (5th Cir. 1979); *Lyons v. Johnson,* 415 F.2d 540, 542 (9th Cir. 1969); *Mt. Vernon Sav. & Loan v. Partridge Assocs.,* 679 F. Supp. 522, 529 (D. Md. 1987); *Stop & Shop Cos. v. Interstate Cigar Co.,* 110 F.R.D. 105, 108 (D.

Mass.1986); *Jones v. B.C. Christopher & Co.,* 466 F. Supp. 213, 227 (D. Kan. 1979); *Penn Communications Specialties Inc. v. Hess,* 65 F.R.D. 510, 512 (E.D. Pa. 1975); *Wansong v. Wansong,* 395 Mass. 154, 157-58, 478 N.E.2d 1270 (1985)." Also see *United States v. 4003-4005 Fifth Avenue,* 55 F.3d 78, 83-84 (2d Cir. 1995); *SEC v. Graystone Nash Inc.,* 25 F.3d 187 (3d Cir. 1994), and the cases cited in these two opinions.

Under this standard, noncompliance with pleading requirements cannot be a basis for entering a judgment against a party properly invoking the Fifth Amendment privilege in his or her response to the complaint. If the claim of privilege is properly invoked, the invocation of the privilege will be treated as a specific denial, thus forcing the plaintiff to prove the matters covered by the denial. *North River Insurance Co. Inc. v. Stefanou,* 836 F.2d 484 (4th Cir. 1987); *Rogers v. Webster,* 776 F.2d 607, 611 (6th Cir. 1985), and cases cited therein; and 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1280 at 515-16 (2d ed. 1990).[2]

However, at the trial of a civil proceeding an adverse inference can be drawn when a party invokes the Fifth Amendment privilege and refuses to testify in response to probative evidence. See *Harmon v. Mifflin County School District,* 552 Pa. 92, 99, 713 A.2d 620, 623-24 (1998), where the Pennsylvania Supreme Court described the inferences that may be drawn as follows:

---

2. Case law holds that a party responding to the complaint shall not assert the privilege in a general fashion. A party shall file an answer in which the party answers those allegations that he or she can and asserts the privilege as to the rest. See *North River Insurance Co. Inc. v. Stefanou, supra,* 831 F.2d at 486-87; *Rogers v. Webster, supra,* 776 F.2d at 611.

"The inference discussed in *Baxter* [*v. Palmigiano, supra,* 96 S.Ct. 1551] is akin to the well established rule in civil proceedings that a party's failure to testify can support an inference that whatever testimony he [w]ould have given would have been unfavorable to him. See *Beers v. Muth,* 395 Pa. 624, 151 A.2d 465 (1959). Our case law indicates that the inference to be drawn from a party's failure to testify serves to corroborate the evidence produced by the opposing party. See *Dommes v. Zuroski,* 350 Pa. 206, 209, 38 A.2d 73, 75 (1944). Also, the failure to testify to facts within one's presumed knowledge permits an inference that can erase the equivocal nature of other evidence relating to a disputed fact. See *Hall v. Vanderpool,* 156 Pa. 152, 26 A.1069 (1893). However, we have never suggested that a party could satisfy its burden of proof in a civil cause solely through reliance on the defendant's failure to testify." Also see *Commonwealth v. $23,320.00 U.S. Currency,* 733 A.2d 693 (Pa. Commw. 1999).

There are two waiver issues that are presented through the motions filed in these cases: (1) did defendants waive their right to assert a Fifth Amendment privilege by filing answers addressing the merits of each of the factual allegations in the complaint and, in one instance, by responding to a request for admissions; and (2) if defendants did not waive their right to raise a Fifth Amendment privilege, have they, by asserting this privilege, waived the right to testify at trial and to offer affidavits or other verified responses in opposition to a motion for summary judgment?

As to the first issue, case law holds that a party cannot during the trial of the proceeding voluntarily testify about a subject and then invoke the privilege against self-in-

crimination when questioned about the details. See *Mitchell v. United States, supra,* 119 S.Ct. at 1312, where the United States Supreme Court stated that the privilege is waived for the matters to which the witness testified; the witness determines the area of disclosure and, thus, establishes the scope of the cross-examination.

"The justifications for the rule of waiver in the testimonial context are evident: A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry. As noted in *Rogers* [*v. U.S.,* 340 U.S. 367, 371], a contrary rule 'would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony.' . . . The illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness, so there is no unfairness in allowing cross-examination when testimony is given without invoking the privilege."

This rationale for finding a waiver for those matters to which a witness testified does not apply where a party either at the trial or prior to trial invokes the Fifth Amendment privilege as to matters that this party addressed in pleadings or through prior discovery responses. In this situation, the other parties to the litigation are not placed at a disadvantage by the shift of the party's position. They can use any previous discovery which advances their case. However, the party now invoking the Fifth Amendment cannot during the remaining proceedings, including trial, use any of his or her pleadings or discovery responses to that party's advantage as to any subject for which the privilege is now being invoked. For example,

a party who asserts the Fifth Amendment privilege as to a particular subject is barred from responding to a motion for summary judgment by submitting his or her own affidavit addressing the subject (or from relying on any statements made under oath that are already part of the record). *Edmond v. Consumer Protection Division,* 934 F.2d 1304, 1308 (4th Cir. 1991) ("In the context of cross-examination, courts have struck testimony when the defendant has invoked the Fifth Amendment to refuse to respond to cross-examination questions. . . . The same principle applies when a party seeks to invoke the Fifth Amendment to avoid discovery while offering an affidavit to compel a certain result on summary judgment."); *Dunkin' Donuts Inc. v. Taseski,* 47 F. Supp.2d 867, 872-73 (E.D. Mich. 1999), and cases cited therein; ABA Section of Antitrust Law, *The Right Against Self-Incrimination in Civil Litigation* 89-92 (2001).

There is little case law supporting the position that an answer to a complaint or a response to discovery constitutes a waiver of the Fifth Amendment privilege with respect to the matters addressed in the answer or response for the remainder of the proceedings. In order to find a waiver, a court must conclude that the risk of prosecution remains the same. ABA Section of Antitrust, *The Right Against Self-Incrimination in Civil Litigation, supra* at 128. Ordinarily, this conclusion cannot be made because the additional information that is being sought may provide more evidence that may tend to incriminate the party invoking the Fifth Amendment, including the possibility of evidence supporting a perjury charge.

I now address the issue of whether defendants, by invoking the Fifth Amendment privilege, have waived their right to offer testimony in this case (in which event plain-

tiffs would pursue discovery and otherwise prepare for a trial at which the defendants would not be testifying on any subject for which they have asserted the Fifth Amendment privilege).

A party who properly asserts the Fifth Amendment privilege in a civil proceeding is not automatically barred from later deciding to waive his or her Fifth Amendment protections. However, the party who switches positions will not be permitted to offer testimony as to matters for which the Fifth Amendment privilege had been invoked where this would provide a significant tactical advantage to this party. For example, ordinarily, a party who has avoided discovery by asserting the Fifth Amendment privilege will not be permitted on the eve of trial to waive his or her Fifth Amendment protections for the purpose of testifying at trial. Also, at the request of a party, a court may set a time, based on a need of the parties to complete discovery, after which the party who has invoked the Fifth Amendment privilege will be barred from offering at trial his or her testimony on matters for which the Fifth Amendment was invoked to prevent discovery. See generally, *United States v. 4003-4005 Fifth Avenue, supra,* 55 F.3d at 85-86; *SEC v. Graystone Nash Inc. supra,* 25 F.3d at 191-92; *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir. 1989); *Dunkin' Donuts Inc. v. Taseski, supra,* 47 F. Supp.2d at 872-73.

The next issue is whether in the *Bricker* litigation the corporate defendant properly asserted the privilege against self-incrimination. The law is settled that only an individual may assert a Fifth Amendment privilege; the Fifth Amendment's protection against self-incrimination does not apply to corporations. *Braswell v. United States,* 108 S.Ct. 2284, 2287 (1988); *United States v.*

*Kordel,* 90 S.Ct. 763 (1970). Thus, when interrogatories are directed to a corporation, a corporate representative cannot object on the basis that the answers may tend to incriminate the corporation. However, the corporate representative may assert his or her privilege against self-incrimination if the answers may tend to incriminate the representative personally. But if the representative whom the corporation appoints to act on its behalf asserts the Fifth Amendment privilege, the corporation must appoint someone else to respond on its behalf unless the corporation can show that there is no corporate representative who could furnish the discovery without the possibility of self-incrimination. *Id.* at 767-68. ABA Section of Antitrust Law, *The Right Against Self-Incrimination in Civil Litigation, supra* at 123; 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* §2018 at 276 (1994).

This litigation also raises the issue of whether a protective order should issue barring plaintiff from deposing defendant on the ground that defendant will invoke the Fifth Amendment privilege to any question that is asked. A protective order may not issue because "the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in this manner . . . . The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." *Doe v. Glanzer,* 232 F.3d 1258, 1263 (9th Cir. 2000). Also see *In re DG Acquisition Corp.,* 151 F.3d 75, 80-81 (2d Cir. 1998), and cases cited therein.

A related issue is whether the party who has invoked the Fifth Amendment privilege in civil proceedings is entitled to a protective order barring the scheduling of his or her deposition until the criminal proceedings are completed. This depends upon the impact of such an order on the scheduling of the civil action. See *Mitchell v. United States, supra,* 119 S.Ct. at 1315, quoted at page 8 of this opinion which recognized that the accommodations afforded the party invoking the Fifth Amendment privilege cannot unduly interfere with other parties' interests in having the civil litigation proceed.

In this litigation, defendants who are natural persons have withheld documents they prepared in the ordinary course of business based on the Fifth Amendment privilege against self-incrimination. The Fifth Amendment applies only to compulsory testimony, so the Fifth Amendment does not protect any documents, including financial and other business records, absent proof that they were created under compulsion.[3] However, an individual may raise the Fifth Amendment privilege against self-incrimination if his or her act of producing the documents may incriminate the individual. (But this Fifth Amendment protection may not extend to agents of corporate entities compelled to produce corporate records.) See generally, *Fisher v. United States,* 96 S.Ct. 1569 (1976); *Braswell v. United States, supra,* 108 S.Ct. 2284; ABA Section of Antitrust Law, *The Right Against Self-Incrimination in Civil Litigation, supra,* at 118-19; and 8 Wright, Miller & Marcus, *Federal Practice and Procedure, supra,* §2018 at 277-79.

3. Case law holds that tax returns are not created under compulsion for purposes of the Fifth Amendment's protections against self-incrimination. *Garner v. United States,* 96 S.Ct. 1178 (1976).

## III.

I will now apply these principles governing a party's assertion of his or her Fifth Amendment rights in civil proceedings to the specific matters before the court.

Plaintiffs are not entitled to have the answers to the complaints stricken. Defendants could have, instead, filed answers raising the Fifth Amendment privilege to those allegations for which the privilege is applicable. If they had done so, the answers would have been treated as specific denials. Consequently, plaintiffs are in the same position as if the privilege had initially been asserted.

If the answers and the discovery responses which defendants filed constitute a waiver of defendants' right to assert the Fifth Amendment privilege, defendants would have the choice of furnishing the discovery which plaintiffs seek or being subjected to those sanctions that a court may impose against a party that fails to comply with court orders compelling discovery. However, the answers and discovery responses do not constitute a waiver, because the additional discovery that is sought may present new or different self-incrimination risks.

At this time, any request for a court order that would preclude a defendant from testifying at trial or submitting his affidavit in summary judgment proceedings is premature. There has been no showing that any of the lawsuits are at a stage where the other parties cannot adequately prepare for trial if the defendant later withdraws his assertion of the Fifth Amendment privilege in order to offer testimony.

The documents which plaintiffs seek shall be produced because there has not been a showing that they were cre-

ated under compulsion or that the act of producing the documents would tend to incriminate the defendant.

In the *Haas* litigation, defendants raised other grounds for refusing to produce documents. I find these other grounds to be without merit. However, the names of other clients may be redacted.

In the *Bricker* litigation, the corporate defendant's answer to plaintiffs' interrogatories is stricken as to those discovery requests for which the corporation invoked a Fifth Amendment privilege because this privilege does not protect corporations.

In the *Elovitz* case, there will be no further discovery until the criminal proceedings are resolved or until July 15, 2003, whichever is earlier.

## ORDER

On June 4, 2003, it is ordered that within 20 days defendant shall furnish the documents described in the notice of deposition, and plaintiffs' request to compel discovery or for the imposition of sanctions is otherwise denied.

## ORDER

On June 4, 2003, it is hereby ordered that:

(1) within 20 days Allied Truck Inc., shall furnish the discovery that is sought in those interrogatories and document requests for which it asserted the privilege against self-incrimination;

(2) within 20 days Mr. Atkinson shall produce the documents described in document request numbers 3 and 4; and

(3) the request of plaintiffs to compel discovery is otherwise denied.

## ORDER

On June 4, 2003, it is hereby ordered that:

(1) within 20 days defendants shall fully comply with my January 10, 2003 court order governing the production of documents;

(2) plaintiffs may schedule Mr. Miller's deposition for a date after the criminal proceedings are completed or after July 14, 2003, whichever is earlier; and

(3) plaintiffs' request to compel other discovery for which Mr. Miller asserts a Fifth Amendment privilege is denied.