[Cite as *Williams-Salmon v. Raheja*, 2022-Ohio-1675.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MARILYN WILLIAMS-SALMON | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 110856 and 110928 |
| v. | : | |
| DEEPAK RAHEJA, M.D., ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 19, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-928108

*Appearances:*

Ryan, LLP, Thomas P. Ryan and Daniel J. Ryan, *for appellee*.

Squire Patton Boggs, LLP and Colin R. Jennings, *for appellant* Gregory Hayslette.

Donald J. Malarcik and John P. Stiles, *for appellant* Frank Mazzucco.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendants-appellants, Gregory Hayslette ("Hayslette") and Frank Mazzucco (individually "Mazzucco," collectively "appellants") appeal the trial

court's interlocutory order granting plaintiff-appellee's Marilyn Williams-Salmon's ("appellee") motion to compel. After a thorough review of the law and facts, we affirm.

### I. Procedural History and Facts

{¶ 2} This civil suit emanates from a course of treatment for appellee wherein she was prescribed prescription medication by her doctor, Deepak Raheja, M.D. ("Dr. Raheja"). It was alleged that appellee received medical treatment from Dr. Raheja between 2010-2016. Appellee claims at some point during this treatment, she was misdiagnosed with a neurological disorder known as Pseudobulbar Affect ("PBA"). Appellee maintains that she was unaware of her misdiagnosis until November 2019, when she was informed by the United States Attorney's Office that she was a potential victim of an illegal kickback scheme. This scheme allegedly involved Avanir Pharmaceuticals, Inc. ("Avanir") and its employees providing illegal incentives to Dr. Raheja in exchange for prescribing medications to patients, like appellee, for conditions unsupported by their presenting symptoms. Specifically, appellee contends that she was prescribed a medication called Nuedexta, which is sold by Avanir. Hayslette worked for Avanir as a pharmaceutical sales representative responsible for the marketing of Nuedexta. Mazzucco was his supervisor. Appellee alleges she suffered numerous personal injuries due to appellants' conduct.

{¶ 3} In 2019, appellants, among others, were charged in an 83-count indictment in federal court. The indictment alleged, among other crimes, that the

appellants had violated the federal Anti-Kickback Statute, 42 U.S.C. 1320a-7b(b)(1)(B) and 42 U.S.C. 1320a-7b(b)(2)(B).[1]

{¶ 4} Appellee filed the underlying action against appellants, Dr. Raheja and Avanir, on January 21, 2020, alleging: medical malpractice against Dr. Raheja; medical battery and lack of informed consent against Dr. Raheja; negligence against all defendants; civil recovery for a criminal act, R.C. 2307.60, against all defendants; Ohio corrupt practices act, R.C. 2923.34, against all defendants; and civil conspiracy against all defendants.[2]

{¶ 5} The court conducted a status conference on December 17, 2020, and ordered the parties to complete fact discovery by August 31, 2021. In December 2020, appellee filed an amended complaint, attaching an affidavit of merit pursuant to Civ.R. 10(D)(2); the amended complaint included the same parties, allegations, and prayers for relief as the original pleading. Appellee filed motions to compel discovery against each appellant in June 2021, those motions were granted by the court on September 15, 2021. This timely appeal follows.

### A. The Discovery Dispute

---

[1] In March 2022, Hayslette pled guilty to Count 1, Conspiracy to Solicit, Receive, Offer and Pay Healthcare Kickbacks in violation of 18 U.S.C. 371 and is awaiting sentencing. Trial for Mazzucco and Dr. Raheja is set for October 2022. Dr. Raheja is not a party to this appeal.

[2] In February 2020, Avanir removed the case to federal court asserting that federal court had jurisdiction under 28 U.S.C. 1331. In March 2020, appellee filed to remand the case back to state court; the court granted her motion. *Williams-Salmon v. Avanir Pharmaceuticals, Inc.*, N.D.Ohio No. 1:20 CV 419, 2020 U.S. Dist. LEXIS 136347, 17 (July 31, 2020).

{¶ 6} In March 2021, appellee issued discovery requests to both appellants, which included interrogatories, requests for production of documents, and requests for admissions.

### i. Interrogatories

{¶ 7} Appellee's interrogatories asked each appellant to identify and/or confirm:

1. Witnesses, including expert witnesses. (INT #1-2, 5)

2. Exhibits to be used at trial. (INT #3)

3. Persons who assisted appellants in preparing discovery. (INT #4)

4. Name, current and former addresses, employers. (INT #5, 8, 9)

5. Proper service of complaint. (INT #6)

6. Employment history with Avanir. (INT #10-12, 14-15)

7. Sources of income. (INT #13)

8. Statements given to Avanir or Avanir investigators. (INT #16, 19)

9. Witnesses in federal criminal case. (INT #17-18)

10. Civil and criminal case history. (INT #20-21)

11. Witness statements in connection with criminal case. (INT #22)

12. Insurance coverage and any communications with insurer. (INT #23)

### ii. Request for Production of Documents

{¶ 8} Appellee's request for production of documents requested copies of:

1. Documents to be used in trial. (RFP #1)

2. Appellee's medical records and bills. (RFP #2-4)

3. Appellants' curriculum vitae. (RFP #5)

4. Expert reports. (RFP #6-9)

5. Photographs or video recordings of appellee. (RFP #10)

6. Communications among co-defendants. (RFP #11-13)

7. Communications with other named individuals, including Avanir. (RFP #14-30)

8. Contracts with Avanir. (RFP #31-33)

9. Avanir training manuals, assessments, or compliance documents. (RFP #34)

10. Reports, recordings, and video recordings related to services provided to appellee. (RFP #35)

11. Documents received from the government during appellants' criminal matter. (RFP #36-37)

12. Payments received from Avanir. (RFP #38)

13. Insurance coverage and any communications with appellants' insurance companies. (RFP #39-42)

14. Communication between appellants and appellee. (RFP #43)

14. Account profile sheets demonstrating the number of patients seen by Dr. Raheja from 2011 to 2016. (RFP #44)

15. Avanir's internal investigation report and file. (RFD#45-47)

16. Documents concerning Avanir's Speaker's Bureau Program, including the training and communication from lawyers, managers, and compliance personnel. (RFP #47-49, 56)

17. Communications with Avanir's compliance or legal department. (RFP #50)

18. Documents representing deleted text messages of Avanir employees. (RFP #51)

19. Government subpoenas. (RFP #52-53)

20. Notes from the September 23, 2019, meeting of Avanir's board of directors. (RFP #54-55)

21. Documents related to and copies of various research reports and studies. (RFP #57, 59)

22. Documents related to "the criminal case in the United States District Court for the Northern District of Georgia, Criminal Action Number 1:19-CR-00369, if any." (RFP #58)

### iii. Request for Admissions

{¶ 9} Appellee's request for admissions asked appellants to admit to the following:

1. Admit to the authenticity of each document produced in discovery. (RFA #1)

2. Admit that the text messages between each appellant and his co-defendants as listed as exhibits in the criminal complaint are "true and accurate." (RFA #2, 4, 21, 23)

3. Admit that the text messages between each appellant and his co-defendants as listed as exhibits in the criminal complaint are authentic duplicates of the text communications. (RFA #3, 5, 22, 24).

4. Admit that payments made by appellants as listed as exhibits in the criminal complaint are "true and accurate," that appellants made those payments or directed them to be made, and the exhibits are authentic duplicates of the amounts stated. (RFA #6 – 16, 17 – 19)

5. Admit appellants paid for dinners on the dates as listed in exhibits to the criminal complaint. (RFA #17, 20).

### iv. Appellants' Assert Fifth Amendment Privilege

{¶ 10} Appellants separately responded to each of the 116 discovery requests with substantially the same statement, which reads as follows:

Defendant respectfully declines to answer based upon the protections guaranteed by the Fifth Amendment to the United States Constitution and by Section 10, Article 1 of the Ohio Constitution. Pursuant to

*Rogers v. Webster*, 776 F.2d 607, 611 (6th Cir. 1985), Defendant requests that the Court treat this claim of privilege as equivalent to a specific denial and put the Plaintiff to its proof of the matter asserted.

(Italics added.)

**{¶ 11}** After receiving these perfunctory responses, appellee corresponded with each appellant seeking their cooperation and attempting to resolve this discovery dispute without court intervention. Appellants reasserted their prior responses, providing no information in response to appellee's written discovery and reasserting a blanket Fifth Amendment privilege. Appellee then filed separate motions to compel, and the matter was fully briefed below.

**{¶ 12}** On September 15, 2021, the trial court granted appellee's motions to compel discovery, finding that "Defendants have failed to establish how the specific discovery requests create a hazard of incriminating [them]." The trial court ordered the appellants to provide discovery responses "to plaintiff's interrogatories, request for production of documents, and request for admissions within 14 days of the date of this entry."

### II. Assignments of Error

### A. Hayslette's Assignments of Error

I. The trial court erred in granting Plaintiff's motion to compel discovery after Mr. Hayslette properly asserted his right against self-incrimination guaranteed by the Fifth Amendment of the U.S. Constitution.

II. The trial court erred in granting Plaintiff's motion to compel discovery after Mr. Hayslette properly asserted his right against self-incrimination guaranteed by the Article I, Section 10 of the Ohio Constitution.

**B. Mazzucco's Assignment of Error**

I. The trial court erred as a matter of law compelling Mr. Mazzucco to respond to discovery requests in violation of his right against self-incrimination under the United States and Ohio Constitutions.

{¶ 13} We have sua sponte consolidated the appeals for review. The assignments of error are also combined for review.

**III. Law and Analysis**

**A. Standard of Review**

{¶ 14} This appeal involves mixed questions of law and fact. Appellants contend that the privilege against self-incrimination applies to the requested discovery. That is a question of law we review de novo. *Sojic v. Karp*, 2015-Ohio-3692, 41 N.E.3d 888, ¶ 21 - 22 (2d Dist.); *Neal v. Lilly*, 2d Dist. Montgomery Nos. 28082 and 28400, 2020-Ohio-128, ¶ 29. We review the trial court's order compelling answers to a particular question for an abuse of discretion. *Karp* at ¶ 22.

{¶ 15} The Ohio Rules of Civil Procedure provide the method by which objections may be made to interrogatories and the production of documents. *See State ex rel. DeWine v. Buckeye Impact Group, LLC*, 6th Dist. Sandusky No. S-18-001, 2018-Ohio-4578, ¶ 6. Civ.R. 33(A)(3) provides, in relevant part:

> Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The party upon whom the interrogatories have been served shall quote each interrogatory immediately preceding the corresponding answer or objection. * * * The answers are to be signed by the person making them, and the objections signed by the attorney making them.

{¶ 16} Civ.R. 34(B)(1) provides, in relevant part:

The party upon whom the request is served shall serve a written response within a period designated in the request that is not less than twenty-eight days after the service of the request or within a shorter or longer time as the court may allow. With respect to each item or category, the response shall state that inspection and related activities will be permitted as requested, unless it is objected to, including an objection to the requested form or forms for producing electronically stored information, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified.

## B. Right against Self-Incrimination

{¶ 17} The Fifth Amendment to the United States Constitution states, in pertinent part, "No person * * * shall be compelled in any criminal case to be a witness against himself [or herself] * * *."  Section 10, Article I, Ohio Constitution similarly provides "No person shall be compelled, in any criminal case, to be a witness against himself [or herself]."

{¶ 18} The protections of the Fifth Amendment apply in any type of proceeding, including civil proceedings, and exist primarily to "assure that an individual is not compelled to produce evidence which may later be used against him [or her] as an accused in a criminal action." *Cincinnati v. Bawtenheimer*, 63 Ohio St.3d 260, 264, 586 N.E.2d 1065 (1992), citing *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975).  In this context, "incrimination" means not only evidence that would directly support a criminal conviction but information that would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence that an individual "reasonably believes" could be used against him or her in a criminal prosecution.  *In re M.B.*, 8th Dist. Cuyahoga

Nos. 101094, 101095, and 101096, 2014-Ohio-4837, ¶ 9, citing *Bawtenheimer* and *Maness*. Those protections extend through the sentencing phase of a criminal case. *See Mitchell v. United States*, 526 U.S. 314, 328-329, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

{¶ 19} "The privilege against self-incrimination, one of our most cherished fundamental rights, is jealously guarded by the courts." *N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 486-487 (4th Cir.1987). "It protects an individual not only from involuntarily becoming a witness against himself [or herself] in a criminal proceeding but also from answering specific allegations in a complaint or filing responses to interrogatories in a civil action where the answers might incriminate him [or her] in future criminal actions." *Id.*

{¶ 20} "The privilege against self-incrimination may not be invoked merely by asserting that the information sought * * * may in a general sense be incriminatory." *Bawtenheimer* at 266. In general, a witness may not make a blanket assertion of his or her Fifth Amendment privilege; the "presumption against blanket assertions of Fifth Amendment privilege is premised on the commonsense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with 'reasonable cause.'" *Sojic,* 2015-Ohio-3692, 41 N.E.3d 888 (2d Dist.) at ¶ 31, citing *United States v. Bates*, 552 F.3d 472, 475-476 (6th Cir. 2009).

{¶ 21} "A blanket assertion of the privilege is not sufficient to show reasonable cause to apprehend a real danger of incrimination, and the privilege

cannot be claimed in advance of the questions. The privilege must be asserted as to particular questions." *State ex rel. DeWine v. Buckeye Impact Group, LLC*, 6th Dist. Sandusky No. S-18-001, 2018-Ohio-4578, ¶ 5, citing *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). In order to properly invoke the privilege, the person claiming it must not only affirmatively assert it but must also do so "*with sufficient particularity* to allow an informed ruling on the claim." (Emphasis added.) *Stefanou* at 487.

{¶ 22} Once a person has properly invoked the privilege, the court must determine whether a valid Fifth Amendment privilege has been asserted. To do so, a court first asks if the information is incriminating in nature. *Bawtenheimer*, 63 Ohio St.3d at 266, 586 N.E.2d 1065, citing *United States v. Sharp* 920 F.2d 1167, 1170 (4th Cir.1990). It may be evident on its face, considering the question asked and the circumstances of its asking, and if it is facially evident, the inquiry ends. *Bawtenheimer* at 266-267, citing *Sharp.* If it is not facially evident, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof. *Bawtenheimer* at 267, citing *Sharp.* If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. *Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP-327, 2014-Ohio-4588, ¶ 24, citing *Bawtenheimer.* As to this, the proper test simply assesses the objective reasonableness of the party's claimed apprehension of the prosecution. *Vega* at *id.*, citing *Bawtenheimer.*

### C. Parties' Arguments

{¶ 23} In the case at bar, each appellant moved to stay the case until his criminal case resolved. The trial court denied the motions. The Fifth Amendment does not prohibit civil litigation while the possibility of criminal prosecution exists, and it "'does not shield a party from appearing or defending in a civil action.'" *Sojic* at ¶ 30, quoting *Sweet v. Hunt*, 2d Dist. Greene No. 2013 CA 37, 2014-Ohio-631, ¶ 11.

{¶ 24} Appellee contends that the appellants impermissibly refused to answer discovery by giving a blanket refusal to respond. The appellants contend that their discovery responses were not blanket assertions because they comport with the Civil Rules.

{¶ 25} In *Buckeye Impact Group, LLC*, 6th Dist. Sandusky No. S-18-001, 2018-Ohio-4578, the Ohio Attorney General's Office filed a complaint against the appellants alleging violations of the Ohio Consumer Sales Practices Act. The Attorney General served the appellants with interrogatories and requests for the production of documents and filed a motion to compel when appellants were not forthcoming with discovery. In response, the appellants asserted that the discovery would violate their constitutionally protected right against self-incrimination. The Sixth District Court of Appeals held that the appellants did not properly invoke the right against self-incrimination because they did not respond to the interrogatories or document requests with specific objections or answers on a question-by-question

basis. Moreover, the appellants did not respond in accordance with Civ.R. 33(A)(3) or 34(B)(1).

{¶ 26} In the case at bar, the appellants responded to every one of appellee's 33 interrogatories, 59 requests for production of documents, and 24 requests for admissions with substantially the same statement:

> Defendant respectfully declines to answer based upon the protections guaranteed by the Fifth Amendment to the United States Constitution and by Section 10, Article 1 of the Ohio Constitution. Pursuant to *Rogers v. Webster*, 776 F.2d 607, 611 (6th Cir. 1985), Defendant requests that the Court treat this claim of privilege as equivalent to a specific denial and put the Plaintiff to its proof of the matter asserted.

(Italics added.)

{¶ 27} While the appellants' answers arguably comport with Civ.R. 33(A)(3) and 34(B)(1), we find making the same statement attempting to invoke one's Fifth Amendment privilege to 116 discovery requests equates to a blanket assertion of privilege.

{¶ 28} A cursory review of the questions posed in discovery show numerous basic questions, such as legal name (INT #5), service of complaint (INT #6), addresses (INT #8), and employment history (INT #9-12) that do not ask for privileged information. And while we do not dispute that some, if not many, of the 116 discovery requests "could lead to incriminating information" as argued by appellants, they must first properly invoke their privilege against self-incrimination before the trial court is charged with determining if the requested information is privileged.

{¶ 29} Appellants contend that because they were already under indictment and appellee's discovery requests asked for admissions or documents directly related to their criminal indictments, it should have been clear to the trial court that answering any of the discovery requests incriminate them. The problem with appellants' argument is that it presupposes that they properly asserted the privilege.

{¶ 30} The appellants argue that the lower court erred in not performing a question-by-question inquiry as to their self-incrimination claim and should determine the merits of their assertion of privilege. The appellants, however, improperly place the onus on the trial court.[3] A person wishing in good faith to assert the privilege must do so "with respect to particular [allegations]," thereby allowing the trial court to determine the propriety of each refusal. *Stefanou*, 831 F.2d at 487 (4th Cir.), citing *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). The privilege may be asserted and preserved during discovery proceedings but must be done "in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each question." *Stefanou* at *id.*, citing *United States v. Gordon*, 10 C.I.T. 292, 634 F. Supp. 409, 418 (Ct. Intl. Trade 1986).

---

[3] Hayslette argues that the court failed to "engage in the deliberative process necessary to assess the assertion of the privilege * * * while also not undertaking any analysis to balance the interests of the parties." Hayslette Brief, p. 20. Mazzucco contends that a question-by-question assessment is unnecessary because the risk of incrimination had already been realized because he was presently under indictment. Mazzucco Brief, p. 16.

{¶ 31} Thus, because the appellants made the same blanket assertion for each of the 33 interrogatories, 59 requests for production of documents, and 24 requests for admissions, they have failed to answer with sufficient specificity to provide the trial court "with a record upon which to decide whether the privilege has been properly asserted *as to each* question." (Emphasis added.) *Stefanou* at *id.*, citing *Gordon* at *id.*

{¶ 32} The record before us clearly demonstrates that appellants made a blanket assertion of privilege; they have failed to show that the questions propounded upon them in discovery present a significant hazard of incrimination that would involve the Fifth Amendment privilege. In view of the fact that appellants did not properly invoke their rights against self-incrimination, we determine that the trial court did not abuse its discretion in compelling discovery from them.

{¶ 33} Appellant Hayslette makes the request that even if this court does not reverse the trial court's decision, we should remand with instructions that the trial court individually assess each assertion of the right against self-incrimination and balance the respective interests of the parties. Hayslette Reply Brief, p. 10. This request was never made at the trial-court level, and we decline to consider it for the first time on appeal. *See Stefanou* at 487, citing *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir. 1976). We note, however, that nothing in this opinion precludes appellants from *properly* asserting or reasserting their Fifth Amendment privilege on remand or at other stages in the litigation.

{¶ 34} Accordingly, the assignments of error are overruled.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

ANITA LASTER MAYS, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR